MARY RICHSTEIN *vs.* JAMES WELCH.

Essex.     November 6, 1907. — January 27, 1908.

Present: KNOWLTON, C. J., LORING, BRALEY, & RUGG, JJ.

*Covenant.    Way.    Judgment.    Res Judicata.*

If a grantee of land under a warranty deed, which conveys a right of way in an alleyway as appurtenant to the land, is evicted from the use of such alleyway by a paramount title, the covenant of warranty is broken.

In an action for a breach of a covenant of warranty in a deed of real estate, consisting of the plaintiff's alleged eviction from the use of an alleyway adjoining the premises in which the plaintiff was granted a right of way by the deed, the record of a judgment against the plaintiff in an action for trespass, brought against the plaintiff by a third person because of the plaintiff's use of the alleyway, is admissible in evidence to prove an eviction when supplemented by evidence showing that the title was put directly in issue and evidence that the defendant was informed that the action for trespass had been brought and was requested to defend the action and contest the claim of the third person.

In an action for a breach of a covenant of warranty in a deed of real estate, consisting of the plaintiff's alleged eviction from the use of an alleyway adjoining the premises in which the plaintiff was granted a right of way by the deed, the plaintiff, to show an eviction, put in evidence the record of a judgment against him in an action for trespass brought by a third person because of his use of the alleyway. The declaration in the action for trespass consisted of two counts containing general allegations of title, with further averments of distinct trespasses, some of which related only to a use which might have been found to be in excess of the plaintiff's grant, while others rested upon a denial of his right to use the way for any purpose. All the allegations were put in issue by the answer, and there was a general judgment upon the merits for the third person who was the plaintiff in the action for trespass. The extent of the plaintiff's right of way in the alleyway was not defined in his deed. Extrinsic evidence was admitted from which it could have been found that the judgment in the action for trespass rested upon the sole ground that the third person who brought that action had a better title than the plaintiff. There was evidence that the defendant was informed of the action for trespass and was requested by the plaintiff to defend it. The presiding judge ruled that if the defendant was offered in a proper way the defence of the action for trespass the judgment was conclusive against him. *Held,* that this ruling was wrong; that after the evidence was presented it remained a question of fact for the jury to decide upon all the testimony, under suitable instructions, what issues actually had been tried and determined in the action for trespass in which the judgment was obtained, and that it was erroneous to say that as matter of law the defendant was estopped by the judgment to deny the eviction.

CONTRACT for the alleged breach of the covenants of warranty and quiet enjoyment contained in a deed from the defendant to the plaintiff of a parcel of land in Lawrence with the buildings thereon, dated September 16, 1902. Writ dated November 10, 1904.

In the Superior Court the case was tried before *Sherman,* J. The deed described the land as being on the corner of a certain alleyway and contained the words "together with the right to use said alleyway on the East side of said tract." These words were written in with a pen, the rest of the deed being typewritten. It appeared in evidence that the deed originally was drawn without these words, and when the deed was about to be delivered, the defendant was asked about the right of way and thereupon had the words inserted in the deed before delivery. The breach of covenant relied upon by the plaintiff was her eviction from the use of the alleyway. There was a two tenement house on the premises fronting on Tremont Street in the rear of and connected with which was a stable. The easterly line of the stable was within about six inches of the westerly

line of the alleyway. The only entrance to the stable for horses was by a door which opened on the alleyway side in question. It appeared in evidence that the plaintiff's husband kept a horse for his own use in the stable.

The evidence showed that about a year after the purchase of the premises by the plaintiff, one Bergeron, who was the owner of a lot on the opposite side of the alleyway, attempted to stop the plaintiff from using the alleyway and began an action for trespass against her.

This action for trespass first was tried in the Lawrence Police Court, and judgment there was rendered in favor of the defendant in trespass, Richstein, from which judgment the plaintiff in trespass appealed, and in the Superior Court judgment was rendered for the plaintiff in trespass, Bergeron, on October 3, 1904, in the sum of one dollar. The record in the case of *Bergeron* v. *Richstein* was introduced against the objection of the defendant, who excepted to its admission. The judge ruled, that if the defendant properly was tendered the defence of this action of *Bergeron* v. *Richstein*, then the judgment was conclusive against him, to which ruling the defendant excepted. Among the records was the deposition of one Prescott, which was read to the jury by the plaintiff's counsel, and from which it appeared that Prescott testified that the alleyway always was fenced in at the northerly end, and that he, some time in May or June of 1890, put a fence across the entrance of the alleyway on Tremont Street; that upon looking up the records he found that it lacked a week or some few days of the time in which rights would be acquired in the use of the alleyway, and he put up the fence immediately ; that this fence closed the entrance to the passageway completely, that it remained up two or three days, and that at the time he put up the fence he was the owner of a part of the premises in the block fronting on Broadway; that he put up the fence because he was afraid people would acquire a right of passage there.

Evidence then was introduced showing that the husband of the plaintiff, as the agent of his wife, saw the defendant after Bergeron had come out and stopped him driving in over the alleyway, which was before the action for trespass was brought, and told him, " that there was trouble about the place, and that

they wouldn't let him drive in the barn and that it was for Welch to come down and see that party." Shortly after, when Bergeron had brought the action against Mrs. Richstein, Mr. Richstein went again to see Welch. Mr. Richstein testified as follows: "I had the writ with me, and I showed it to him. I says, ' My woman is sued for that passageway to drive in to the barn.' He says, ' I don't care whether she is sued or not. I have nothing to do with that place any more.' I told him, I says, ' It is for you to take care of it, not me or my woman.' I says, ' Don't you know that you gave her a warranty deed of that right of way to the barn ? ' He says, ' I don't know anything about it. I have nothing to do with it.' "

The plaintiff testified that she went with her husband to see the defendant Welch and testified as follows: " When Mr. Richstein came in the yard, Welch came near the team and asked Mr. Richstein what you come, and he says, ' he has a note to go to court, — Mrs. Bergeron ' — and to the question, ' Did you hear what they said ' — she answered — ' and he said, well, I have nothing to do with the case. I sold you the property and that is all I know.' "

The defendant testified that before action was brought Richstein met him on the street and told him that the Bergerons were trying to stop him from using the alleyway but that Richstein and he never had any talk about a writ; that Richstein never came to him with a writ, and never asked him to take the trial of the case and never offered him the defence of the case of *Bergeron* v. *Richstein.* Evidence of the testimony at the trial of *Bergeron* v. *Richstein* then was introduced.

It appeared in evidence that at the trial of the case of *Bergeron* v. *Richstein* in the Police Court, and also in the Superior Court, the defendant was present and that he was a witness in the Superior Court; that after the decision in the case in the Superior Court the Richsteins were notified by either the sheriff or Mrs. Bergeron not to go in the barn any more and that the next morning when Richstein went to the barn Mrs. Bergeron came out and said to him, " You cannot take anything from the barn," and that she wouldn't even let him open the barn, and that thereafter Mrs. Richstein had no use of the barn or alleyway whatever.

It also appeared that after the action and after the Bergerons had stopped Richstein from going into the barn, he went to see the defendant again and said to him, "What are you going to do?" and that he replied, "I ain't going to do anything. I have nothing to do with it. I have sold you this and that is all I am going to do."

It also appeared in evidence that at the trial of the case of *Bergeron* v. *Richstein* a witness testified that the alleyway had been fenced up within twenty years; that he kept a horse there, and one morning he came out to drive and could not and had to pull down the fence; that the clothes reel on the Richstein house was there when Mrs. Richstein bought the place, and it overhung the alleyway four and one-half feet, but was so high that it did not interfere with the passage of teams on the alleyway, and that the Bergerons ordered Richstein to remove the clothes reel.

There was no special finding in the case of *Bergeron* v. *Richstein* which disclosed the ground on which judgment for the plaintiff was rendered, and no evidence other than that stated in the bill of exceptions was introduced to show whether the judgment was founded upon the ground that Richstein had no title in the alleyway, or upon the grounds of the misuse and blocking of a common passageway.

The defendant then introduced a chain of title, which he contended showed by the deeds put in evidence that the defendant had a right to use the alleyway and a right to convey the right to use the alleyway to the plaintiff when he conveyed to her by warranty deed.

The defendant asked the judge to make the following rulings:

1. If he, (the grantor,) sells land on an alleyway, it gives grantee a right to use it.

2. The chain of title gives the defendant a right to use the passageway.

3. The defendant's record (apparently meaning the record of the action of *Bergeron* v. *Richstein*) is not competent at all.

The defendant's counsel began his argument, but had not finished at the adjournment of court. The next morning the defendant's attorney handed to the presiding judge fourteen requests for rulings.

The judge said, "I cannot receive these requests, as they come too late." The defendant's counsel replied, "I know that; I do not expect them to be received as requests, but only as suggestions." Afterwards the counsel for the defendant attempted to read these requests to the jury, but this was not allowed by the judge.

The judge in his instructions to the jury said among other things: "The courts have decided that if a grantee with such a warranty goes to the grantor and says to him 'Now, I am sued; I want you to take and defend me;' gives him an opportunity to take and to defend the suit it controls the matter; if he does not do it, that binds him. The plaintiff offered some evidence — the husband of this plaintiff testified that he went to the defendant and gave him notice that he was threatened, and the defendant told him, 'Go back, you have a right to use that alleyway, pay no attention to it;' and finally, after he received the summons from the Police Court, that he went to the defendant and said to him: 'I am sued. You have given me a warranty deed, and I want you to defend me.' If the defendant had agreed that that was so, I should have said, that we have not to try this case over again to find where the title is, but that would end it, but the defendant denies that this is so, and objects to it, and I then said, 'Well, I will submit this to the jury, because where there is a dispute about a fact I have to submit it to the jury; because you are the gentlemen who have to decide the facts. I try to decide the law, and if I am wrong I am corrected by a higher court; but you are the gentlemen who have to decide the facts, and so I am going to submit this question to you: 'Did the defendant know that a suit was commenced by *Bergeron* v. *Richstein*, and was he requested by Richstein to take and defend the suit?'"

The judge submitted to the jury the following special question: "Did the defendant know that a suit was commenced by Bergeron against Richstein, and was he requested by Richstein, to take and assume the defence of that suit?" The jury answered this question in the affirmative.

The judge then instructed them as follows: "Gentleman, you having answered that question in the affirmative as you have, you have now to pass upon the question of damages between

the parties; and the plaintiff is entitled to recover all reasonable expenses in defending that suit."

The jury then retired again, and returned a verdict for the plaintiff in the sum of $710. The defendant alleged exceptions.

*W. Coulson,* (*D. J. Coulson* with him,) for the defendant.

*L. S. Cox,* for the plaintiff.

BRALEY, J. If the plaintiff has been evicted by a paramount title from the easement in the alleyway which passed under the deed as appurtenant to the premises, the defendant's covenant of warranty was broken, and she became entitled to recover damages for the breach. *Gilman* v. *Haven,* 11 Cush. 330. *Tobey* v. *Taunton,* 119 Mass. 404. *Kramer* v. *Carter,* 136 Mass. 504, 507, 509. *Smith* v. *Richards,* 155 Mass. 79, 82.

Upon the estate was a stable used by the plaintiff's husband, the only entrance to which for horses was by a door which opened on the westerly side of the way, and a dispute as to her title having arisen between the plaintiff and one Bergeron, an abutting owner on the easterly side, he brought an action of tort in the nature of trespass in which he finally obtained judgment for nominal damages. At the trial, the plaintiff relied upon the judgment as conclusive proof of an ouster from any use of the way. If the defendant had not been notified of the former action, still the record was admissible to prove an eviction when supplemented by the evidence introduced by the plaintiff, that title was directly put in issue. *Merritt* v. *Morse,* 108 Mass. 270. But not having been originally a party to the action, he would not be concluded unless not only notice of the action was given to him, but he was tendered the opportunity to take upon himself its defence. The earlier practice was to vouch in the warrantor so that he would be estopped to deny the title by which the tenant suffered an eviction, and while formal notice in writing, because of the ease and accuracy of proof thereby afforded, is desirable, yet it may be oral. The warrantor whether he appears and defends, or makes default, is then considered in law so far a party or privy as to be concluded by the judgment. If the defendant was seasonably notified, and offered the defence, this was sufficient to enable him, if possible, to protect the title, and avoid an action for damages on his covenant. Oliver's Prec. (4th ed.) 840. Jackson on Real

Actions, 14. *Chamberlain* v. *Preble*, 11 Allen, 370, 374. *Boyle* v. *Edmands*, 114 Mass. 373, 375. *Richmond* v. *Ames*, 164 Mass. 467, 476. *Consolidated Lasting Machine Co.* v. *Bradley*, 171 Mass. 127. No set form of words, however, being required, if the testimony of the plaintiff, and that of her husband, was believed, the defendant, notwithstanding his evidence, was fully informed not only that an action had been begun, but that the plaintiff's easement in the passageway was disputed, accompanied by a request to contest the claim. The jury were justified in answering this question in the affirmative, and the defendant's exception to the admission in evidence of the record cannot be sustained.

A more important question is the conclusiveness of the judgment. The declaration in the action for trespass consisted of two counts containing a general allegation of title, with further averments of distinct trespasses, some of which related only to a use which might have been found to be in excess of the plaintiff's grant, while others rested upon a denial of her right to use the way for any purpose. While all the allegations were put in issue by the answer, the judgment upon the merits was general, and may have been rendered upon either or all of the issues which could have been tried within the pleadings. But, if conclusive between the parties or their privies in a subsequent action for the same cause, this rule is inapplicable where the second action is for a different cause, unless it appears that the issue subsequently raised had been actually tried and determined in the first action. Although the defendant was estopped to deny his grant, yet, as the extent of the easement was not defined in the deed, oral evidence was competent to show the measure of this right as prescribed at the date of the conveyance. *Tobey* v. *Taunton, ubi supra.* If it were found, that the grantee either had exceeded her rights, or was without title because her grantor was not seised, the plaintiff in the first action was entitled to judgment. To ascertain what questions had been decided, the parties were accordingly permitted to introduce extrinsic evidence from which it could have been found that the decision rested upon the sole ground that Bergeron had the better title. But even then, it finally remained for the jury under suitable instructions to decide upon all the testimony,

what issues had been actually tried and determined. The ruling, that as matter of law the defendant was estopped by the judgment, was wrong. *Foye* v. *Patch*, 132 Mass. 105, 110, 111. *Cotter* v. *Boston & Northern Street Railway*, 190 Mass. 302, 303, where the later cases are collected.

Because of this error there must be a new trial, and we do not deem it necessary to consider other questions raised by the exceptions.

*Exceptions sustained.*