ERNEST G. LAWRENSON *vs.* WORCESTER LUNCH CAR AND CARRIAGE MANUFACTURING COMPANY.

Middlesex.   March 1, 1938. — June 28, 1938.

Present: FIELD, LUMMUS, DOLAN, & COX, JJ.

*Sale*, Conditional, Warranty. *Assignment. Deceit. Voucher to Defend. Res Judicata.*

A conditional vendor of a lunch car who warranted to an assignee of the vendee's interest at the time of the assignment and later in a bill of sale that the car was and would remain personal property movable by the assignee "at any time he wished," was not liable to the assignee for alleged breach of such warranty where the car had become part of the real estate on which it was located because of acts of the vendee without knowledge of the vendor before the assignment, and the assignee later lost the car through foreclosure of a mortgage on the real estate given for his benefit and with his approval.

An action for alleged deceit in misrepresenting the title to a lunch car inducing the plaintiff to buy it from the defendant could not be maintained where, although it appeared that the defendant, vendor under a conditional bill of sale to a predecessor in title of the plaintiff, on

payment of the full purchase price had made a bill of sale to the plaintiff, the car at that time because of acts of the plaintiff and his predecessor in title for years had been affixed to the realty and the title to the land and the car had been acquired by the plaintiff's brother for the plaintiff's benefit.

A seller vouched in to defend proceedings calling in question the purchaser's title was not liable to the purchaser for failure to defend where the defect in the title, if any existed, resulted from the purchaser's acts.

In an action by a buyer of a lunch car against the seller for breach of warranty of title, the issue of the defendant's liability was not as a matter of law concluded in favor of the plaintiff by an adjudication in a previous suit to the effect that two years after the sale the car was part of the realty on which it was located and that the title of a purchaser at a sale in foreclosure of a mortgage of the realty was paramount to the buyer's title.

CONTRACT OR TORT.   Writ in the Superior Court dated October 22, 1934.

The case was tried before *Brogna,* J., and in this court was submitted on briefs.

The allegations of the third count of the declaration were in substance "that the defendant . . . by fraudulently representing to the plaintiff that it was the owner of" the lunch car in question "induced the plaintiff to buy the same of the defendant"; that the "said lunch car and equipment were not the property of the defendant . . . but, in fact, was the property of the Lowell Trust Company . . . that the said Lowell Trust Company later was taken over by the commissioner of banks . . . who has since taken the same from the plaintiff."

The buying by "the plaintiff" "of the defendant" was by the bill of sale dated September 9, 1931, mentioned in the opinion.   At that time, the title to the property was in the plaintiff's brother, who was acting for him and had taken title on June 12, 1930.   The Lowell Trust Company was a mortgagee from the brother under a mortgage deed of that date of the land and the "buildings thereon."   The lunch car had been affixed to the realty at least since 1928.

*M. J. Cohen,* for the plaintiff.

*C. A. Warren & N. R. Voorhis,* for the defendant.

Cox, J.   This is an action of contract or tort.   The first count of the declaration alleges the breach of covenants

contained in a bill of sale dated September 9, 1931, of a lunch car purchased from the defendant. The second count alleges the purchase of the lunch car; that the defendant executed the bill of sale described in the first count; that the commissioner of banks in possession of the Lowell Trust Company, claiming title to the car, brought a bill in equity against the plaintiff in the case at bar which resulted adversely to him; that the plaintiff seasonably tendered to the defendant the defence of this bill in equity but that it refused to defend; that at the time the car was sold, it was real estate and not personal property; that the defendant had no title to the lunch car and had no right to sell it as personal property. The third count is for alleged deceit. The case was heard by a jury and the judge directed a verdict for the defendant on the third count. The jury returned a verdict for the plaintiff on the other counts, which, on leave reserved, was set aside, a verdict for the defendant being entered. The case comes to this court on a report by the trial judge.

The evidence tended to prove, and the jury would have been warranted in finding, that in June, 1927, one Cronin wished to secure a portable lunch car and that on August 20, 1927, the defendant delivered to him such a car at its place of business in Worcester, in accordance with the terms of a "conditional sale agreement," signed by Cronin, one term of which was that title to the car "is now and is to be" in the defendant until the full amount of the purchase price should be paid. At that time, Cronin owned a lot of land in Lowell which was subject to a mortgage of $3,500 to the Lowell Trust Company, hereinafter referred to as the trust company. Before Cronin purchased the car, he saw one Harrigan, the president of the trust company, and told him that he proposed to demolish the old building on his land and to set up "a portable lunch car [to be acquired] from the defendant under a conditional sale agreement whereby title thereto would remain in the seller until the purchase price had been fully paid." The president, for the trust company as mortgagee, consented to the demolition of the old building upon payment of $1,000

in reduction of the mortgage principal, and this payment was made and the old building demolished. The lunch car was designed and constructed by the defendant to rest on four piers. Cronin constructed these piers and dug a cellar where the car was to be located and also one beneath a cook house that he built in the rear of the car. He put in a cement foundation and, after the car had been set, he filled in the front and both ends with brick. The car was wired for electricity, and water and drain pipes were connected at outlets provided for them underneath the car. At no time did the defendant have knowledge or notice of what was done or being done on the land or of how the car was placed, except that it was designed to and did rest on four piers; nor did the defendant have any knowledge of violation of the provisions of the conditional sale agreement, except those relating to the instalment payments required by it.

Cronin operated the car until September, 1928, when he arranged with the plaintiff to transfer to him his interest under the conditional sale agreement, and the business conducted in the car, and also to rent to him the land upon which the car stood. Thereupon Cronin and the plaintiff's brother went to Worcester, where they saw the defendant's treasurer and requested that the defendant consent to the assignment of Cronin's interest under the conditional sale agreement. The treasurer indicated the defendant's willingness to assent, provided all overdue payments were made and that the plaintiff would guarantee all payments falling due thereunder and compliance with all obligations of the conditional vendee. As a result, the plaintiff's brother paid the sums that were overdue and on September 10, 1928, the plaintiff executed and delivered to the defendant an instrument under seal that recited the "lease" to Cronin, the transfer of all of Cronin's rights under the "lease" to the plaintiff and "in consideration of said transfer to me . . . [the plaintiff does] hereby GUARANTEE to . . . [the defendant] all payments falling due under said lease, and . . . [does] FURTHER AGREE to . . . [the defendant] full compliance with

all obligations of the lessee under said lease." The plaintiff's brother testified that when he was in Worcester, the defendant's treasurer agreed that upon completion of the payments the defendant would give the plaintiff a bill of sale of the car; and that the treasurer told him that the car "was then and would always remain personal property and could be moved by the plaintiff at any time he wished." The plaintiff completed the payments on the car and received a bill of sale dated September 9, 1931. The plaintiff's brother acted for him in the purchase of the car and thereafter. From September, 1928, until June, 1933, the car was used and the business was carried on continuously by the plaintiff or in his name. His brother conducted all of the plaintiff's correspondence, made all remittances to the defendant, but always in the plaintiff's name, with nothing to indicate that the plaintiff was not acting himself. His brother went to the lunch car regularly and assisted him in every way he could, and the plaintiff relied upon his judgment. The plaintiff became ill in the fall of 1929, and has since been totally incapacitated. After the plaintiff became ill his brother had charge of his business, kept the books of account, had charge of the money, defended the equity suit and prosecuted the action at bar in behalf of the plaintiff.

In May, 1930, the trust company instituted proceedings to foreclose the Cronin mortgage. Harrigan, its president, sent for Cronin and the plaintiff's brother, and an agreement was reached whereby the latter should bid the property in at the foreclosure sale and should execute his promissory note for $4,000, this being the amount then due on the mortgage, to be secured by a new first mortgage on the land, "with the buildings thereon." This arrangement was carried out * and the plaintiff's brother reported to him "all the arrangements that had been made" and what had been done. What was done was "to help and protect him" (the plaintiff) and the plaintiff "was fully

---

* The sale in foreclosure of the mortgage was on June 12, 1930, when the plaintiff's brother took title. His mortgage to the trust company bore the same date. — REPORTER.

satisfied with what had been done." Thereafter the plaintiff's brother had all the dealings with the bank. The plaintiff "left it all to" his brother.

In May, 1931, Harrigan, the president of the trust company, as a result of information obtained at his request from the defendant by the plaintiff's brother, wrote to the defendant, on the letter head of the trust company, to the effect that the plaintiff had shown "us" the defendant's letter which stated the amount "he now owes you" on the "lunch wagon," and requesting that the defendant have the insurance policy which covered the car made payable to the trust company "as second mortgagee, coming, of course, after your interests." The defendant complied with this request to the extent of having the policy made payable to the trust company "as its interest may appear." Except for this correspondence the defendant never had any knowledge of the encumbrances on the land, of the interest of the trust company therein or of the relations of the trust company with Cronin or with the plaintiff or his brother.

On June 8, 1933, the commissioner of banks, in possession of the trust company, for breach of the conditions of the mortgage given by the plaintiff's brother, caused entry to be made for the purpose of foreclosing the mortgage, took possession of the car and completed the foreclosure by sale on November 23, 1933, to the trust company. On November 27, 1933, the commissioner brought a bill in equity against the plaintiff as more fully appears hereinafter.

It was agreed at the trial that no change had been made in the location of the lunch car and cook house on the land or in the manner in which the lunch car was situated with respect to the land, or to the cook house, since the original installation by Cronin.

A conditional vendee cannot pass title to the subject of a sale, even to a *bona fide* purchaser without notice. *Bousquet* v. *Mack Motor Truck Co.* 269 Mass. 200, and cases cited. Although there is a special property in the conditional vendee which he may sell, assign or mortgage, yet the

general ownership remains in the vendor until the requirements of the contract of sale have been fulfilled. *Giligian* v. *New England Truck Co.* 265 Mass. 51, 54. And, apart from any statute, if such a vendee annexes a chattel so that it becomes a part of his realty, the conditional sale agreement will prevent the conditional vendee and any vendee or mortgagee of his, under a mortgage taken subsequently to the annexation, who takes with notice of the agreement, from claiming the chattel as a part of the realty. *Southbridge Savings Bank* v. *Exeter Machine Works*, 127 Mass. 542. See *Hunt* v. *Bay State Iron Co.* 97 Mass. 279, 283; *Bartholomew* v. *Hamilton*, 105 Mass. 239; *Smith Paper Co.* v. *Servin*, 130 Mass. 511; *Gardner* v. *Buckley & Scott, Inc.* 280 Mass. 106, 111; *Titcomb* v. *Carroll*, 287 Mass. 131. It has not been suggested that G. L. (Ter. Ed.) c. 184, § 13, has any application. See St. 1929, c. 261; *Medford Trust Co.* v. *Priggen Steel Garage Co.* 273 Mass. 349, 353.

The plaintiff's contention as to his rights under the first and second counts of his declaration is stated in his brief as follows: "The only question before this court is whether the defendant is liable for the breach of its expressed warranty of title contained in its bill of sale dated September 9, 1931 . . . and the warranty made by it at the time the plaintiff took over Cronin's contract [on September 10, 1928] and guaranteed the payment thereof, that 'said lunch car was then and would always remain personal property and could be moved by the defendant [*sic*] at any time he wished.'" "On both occasions the lunch car was not personal property, but it had become real estate and did not belong to the defendant." We are asked in the first instance to consider whether there was any breach of warranty of title on September 9, 1931. We do not think there was. Cronin's assignment to the plaintiff of his interest in the conditional sale agreement conveyed merely the right which he then possessed to the lunch car. *American Bridge Co. of New York* v. *Boston*, 202 Mass. 374, 376. At the time of the assignment, Cronin had already installed the car on his land in the manner and condition in which it remained throughout. If this installation amounted to

an impairment of the defendant's title to the car, constituting a breach of the sale agreement on Cronin's part, the plaintiff, by the assignment, took Cronin's right only, subject to all the equities of the defendant against Cronin. *West* v. *Spaulding*, 11 Met. 556. *American Bridge Co. of New York* v. *Boston*, 202 Mass. 374. There is nothing in the record to warrant a finding that the trust company, by virtue of its original mortgage, ever asserted any rights in derogation of the defendant's title to the lunch car. As late as May, 1931, it had asked the defendant to have the insurance policy on the car made payable to it "as second mortgagee, coming, of course, after your [the defendant's] interests." See *Hunt* v. *Bay State Iron Co.* 97 Mass. 279; *Smith Paper Co.* v. *Servin*, 130 Mass. 511. When this mortgage was foreclosed on June 12, 1930, as more fully appears hereinbefore, the plaintiff's brother, "to help and protect" the plaintiff, bought the Cronin real estate upon which the lunch car stood. This was done by arrangement with the trust company, and in doing so the plaintiff's brother "was looking after the interests of his brother." After this foreclosure and in pursuance of the arrangement made with the trust company, the plaintiff's brother gave the trust company a mortgage of the premises which included the "buildings thereon" and the plaintiff was "fully satisfied with what had been done." It was the foreclosure of this mortgage, followed by the suit in equity, which, it is reasonable to assume, resulted in the bringing of the action at bar.

One condition of the sale agreement, which the plaintiff took over by assignment, was that title to the car was to remain in the defendant until the purchase price was paid in full. Nothing was done by the defendant or by anyone else with its knowledge, express or implied, to impair or affect its title to the car, and if the plaintiff has lost the car it is through no fault of the defendant. On the contrary, the plaintiff, acting through his brother, set in motion the chain of events which unfortunately culminated in his loss. He had a duty with respect to the defendant to protect the latter's title to the car. As was said in

*Lively* v. *Rice,* 150 Mass. 171, 172: The plaintiff "now seeks to found upon his own violation of duty a claim against the defendant. The rules of law do not lead to any such unjust and absurd result." See *Gerber* v. *Berstein,* 295 Mass. 132, 137; *Gill* v. *Ferrin,* 71 N. H. 421; *Kinney* v. *Millsap,* 71 Fed. (2d) 578; *Judd* v. *Seekins,* 62 N. Y. 266, 269. Compare *Spring* v. *Tongue,* 9 Mass. 28; *Brown* v. *Bellows,* 4 Pick. 179, 193, 194; *Wiggin* v. *Atkins,* 136 Mass. 292. It follows that the plaintiff is not entitled to recover on any warranty contained in the bill of sale.

We have grave doubts as to anything being open to the plaintiff upon his assertion of an alleged warranty made by the defendant, at the time the plaintiff took over Cronin's contract and guaranteed the payment thereof, that "said lunch car was then and would always remain personal property and could be moved by the defendant [*sic*] at any time he wished." The question does not appear to be open upon the pleadings and we doubt if it was raised at the trial. But if we assume that it is before us, the result is not changed. From what has been said there is nothing in the record to show that the car was not treated by all parties as personal property on September 10, 1928, when the statement of the defendant's treasurer is alleged to have been made. The statement is to be so interpreted as to give effect to the intent of the parties, in the light of the circumstances in which it was made. *Peck* v. *Conway,* 119 Mass. 546. *Lively* v. *Rice,* 150 Mass. 171. *Clapp* v. *Wilder,* 176 Mass. 332, 341. A reasonable construction of the alleged statement is that, in so far as the defendant was concerned, the lunch car would remain personal property and that it could be moved by the plaintiff without interference on the defendant's part. To say, in the circumstances, that the defendant promised anything more than this would be to impute to the parties the making of an "absurd and unreasonable contract." *Gill* v. *Ferrin,* 71 N. H. 421, 423. If the statement is regarded as one of warranty, there has been no breach.

A verdict was directed rightly for the defendant on the third count of the declaration, which alleges that the de-

fendant, by fraudulently representing to the plaintiff that it was the owner of the lunch car, induced him to purchase it. The alleged representation must be taken to be the one just under consideration, contended also to have been a warranty. If taken literally, in the circumstances in which it was made or upon our construction of it, there was no actionable fraud. See *Alpine* v. *Friend Bros. Inc.* 244 Mass. 164, 167.

On November 27, 1933, the commissioner of banks brought a bill in equity against the present plaintiff "to establish the ownership of said Lowell Trust Company of said lunch car," and to restrain the plaintiff in the case at bar from removing it. This was more than two years after the plaintiff had completed the payments due on the car and had received his bill of sale. In the case at bar, the judge, over the defendant's objection, admitted the finding of the master in the equity suit that "so far as it is matter of fact, . . . the lunch car in question has become part of the realty," and also the final decree in the suit which enjoined the defendant therein, the present plaintiff, from "interfering with the plaintiff's right to possession of the premises . . . [and] from removing, or attempting to remove from said premises, or interfering with the plaintiff's control over, the lunch or dining car on said premises." The present plaintiff tendered the defence of this suit in equity to the present defendant, which it neither assumed nor participated in, although it furnished the plaintiff with the original conditional sale agreement, the agreement signed by the plaintiff and its original ledger sheets showing its account with Cronin and the plaintiff in relation to the car. We do not think that the evidence which was admitted establishes liability on the part of the defendant for breach of warranty of title. The case does not come within the rule stated in *Chamberlain* v. *Preble*, 11 Allen, 370, 375, *Richstein* v. *Welch*, 197 Mass. 224, 230, *Gallison* v. *Downing*, 244 Mass. 33, 38. From what has been said already, the defect, if any, in the plaintiff's title arose through no act or default of the defendant. Such a defect, if any, was outside the scope of the defendant's warranty, and any adjudica-

tion as to such a defect cannot be said to bind the defendant. The defendant ought not to be held responsible for its failure to defend a title that has been impaired, if at all, by the plaintiff's own acts. See *Hamilton* v. *Cutts*, 4 Mass. 349, 353; *Pitkin* v. *Leavitt*, 13 Vt. 379, 384. Finally, and upon another ground, we think the evidence that was admitted does not go so far as to foreclose the issue of the defendant's liability for breach of warranty of title. It merely adjudges the trust company's title paramount to that of the plaintiff. It neither discloses nor adjudicates the status of the title to the car either on September 10, 1928, when the alleged oral warranty was made, or on September 9, 1931, when the bill of sale was given, and that status was not necessarily involved in the adjudication. See *Sawyer* v. *Woodbury*, 7 Gray, 499, 503; *Johnson* v. *Morse*, 11 Allen, 540; *Moore* v. *Bostwick*, 23 Mich. 507; *Mason* v. *Kellogg*, 38 Mich. 132, 140; *Chestnut* v. *Tyson*, 105 Ala. 149; *Hilliker* v. *Rueger*, 219 N. Y. 334; *Andrews* v. *Denison*, 16 N. H. 469. Compare *Sandler* v. *Silk*, 292 Mass. 493, 498.

In accordance with the terms of the report the entry must be

*Judgment for the defendant.*