JOAN N. PASQUALE *vs.* CHARLES S. SHORE.

Hampden.    September 27, 1961. — November 29, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Indemnity. Contract,* Of indemnity. *Notice. Practice, Civil,* Exceptions: whether error harmful. *Error,* Whether error harmful.

In an action upon a contract of indemnity against a claim of a third person, evidence of certain statements made orally by an agent of the indemnitee to the indemnitor shortly after the commencement of an action by the third person against the indemnitee and before control of the defence of that action had been assumed by the indemnitee's counsel warranted a finding that the indemnitee's agent had notified the indemnitor of the pendency of that action and called on him to defend it and offered him an opportunity to do so sufficiently to make binding on him a judgment for the third person therein. [243, 245]

In a contract for sale and purchase of real estate and a business conducted thereon, certain undertakings of the seller to indemnify the buyer against competition and various claims respecting the business did not affect an undertaking of the buyer to indemnify the seller against a brokerage claim in connection with the sale and were immaterial in an action by the seller against the buyer upon the buyer's indemnity undertaking. [246]

Leaving to the jury at the trial of an action a matter as to which there was no question of fact for them was harmless where their determination of the matter was correct. [246]

CONTRACT OR TORT.    Writ in the Superior Court dated January 14, 1958.

The action was tried before *Quirico,* J.

*David R. Berg,* for the defendant.

*Frederick S. Pillsbury,* for the plaintiff.

WHITTEMORE, J.    The plaintiff (Pasquale), having settled for $6,000 a verdict in the amount of $7,740.83 in an action against her by a real estate broker (Gentile) for a commission on the sale to the defendant herein (Shore) of real estate in Agawam and the assets of a drug store business, which had been conducted in a part of the premises, brought this action over against Shore.    The jury found

for the plaintiff on count 1 which declared on an indemnity agreement, and for the defendant on count 2 which sounded in tort for knowingly misrepresenting that no broker was connected with the transaction.

Count 1 declared on paragraph 9 of the purchase and sale agreement of February 8, 1956, which provided: "The Buyer represents that no broker was responsible for this sale and the Buyer shall indemnify the Sellers against any claim for brokerage for this sale, provided the Buyer is given the opportunity to defend against any such claim. However, it shall be the obligation of the Sellers to pay any such claim for brokerage that is based solely on the ground that the Sellers gave such claimant an exclusive agency."

Count 1 incorporated the declaration in the Gentile-Pasquale action and also alleged that Shore had been given the opportunity to defend, that he had attended and testified, that the recovery had been on the basis that Gentile's efforts were the predominant efficient cause of the sale, and that after verdict demand for indemnification had been made. The answer was a general denial.

There was evidence of these facts: Pasquale, in engaging Gentile, gave him "an oral exclusive contract." Gentile told druggist Leon Halperin that the property was for sale, that Gentile was the exclusive broker, and asked Halperin to send to him, or "to see the place," anyone interested; "he would make it right with him." Halperin told Shore that the store was for sale, and suggested that Shore look at it. Halperin told Shore that Gentile was the broker with exclusive rights. Shore denied knowing of Gentile. Shore called on the plaintiff, and on February 8, 1956, contracted with her and with Agawam Pharmacy, Inc. (of which she was the sole stockholder) to buy the real property and the business assets. The plaintiff, as she testified, did not tell Shore of Gentile's interest; Shore told her there was no broker involved.

On February 23, 1956, the day on which papers passed, the parties to the February 8 agreement made a supplementary agreement which, in "whereas" clauses, recited

that Pasquale was then the owner of the assets of the pharmacy business "which she is now selling to . . . Shore," and that the plaintiff "has agreed and is now selling" the real estate to Shore's wife. Mrs. Shore was also a party to the February 23 agreement. The final "whereas" clause read: "all of the said parties desire to incorporate herein all agreements not hereinbefore covered by other instruments." The February 23 agreement then provided in paragraph 1 against competition by Agawam Pharmacy, Inc., or the plaintiff, and in paragraph 2 that the corporation and the plaintiff would indemnify the Shores against "any suits, claims, demands, or obligations" of either including taxes. The February 8 agreement provided in paragraph 6 in respect of the value of the stock in trade of the pharmacy business as it was to be transferred, and in paragraph 7 that the "sellers shall indemnify the buyer against any suits, claims, demands or obligations (other than those adequately covered by insurance) which are not disclosed at or before the closing and are attributable to a period prior to the closing."

Several days after February 8 Pasquale learned from her brother-in-law, one Borgatti, who was authorized to "talk for her" in these matters and on whom she relied, that Gentile was making a claim for commission. Shore was working in the pharmacy store with her at that time. Gentile's writ was dated February 24, and shortly after that date Pasquale told Shore that she had been served and was upset, and this was Shore's first knowledge that Gentile was claiming a commission. Borgatti, after the writ was served, told Shore that Pasquale "was getting sued for around $7,000 and that Shore was liable for it"; "it was his duty to defend the Gentile claim"; it was "up to him." Shore replied that Gentile would never get anywhere in court and that he did not want to talk too much about it. Borgatti also testified that he did not tell Shore that "he . . . should defend the claim."

In October, 1957, Robert E. Murphy, Esquire, attorney for Pasquale, asked Shore to come to his office. Those at-

tending were Mr. Murphy, Borgatti, Pasquale, Shore and Frederick S. Pillsbury, Esquire, whom Mr. Murphy had engaged as trial counsel. Mr. Pillsbury then explained that the action was on two grounds, (1) the exclusive agreement and (2) that Gentile caused the sale. Shore was asked about his conversations and other relevant matters, and then left prior to the talk of the attorneys with Borgatti and Pasquale. Shore received a summons as a witness in the Gentile-Pasquale trial; he called his attorney who advised him to attend; Shore was present at the trial every day. Shore never requested permission to have his counsel defend the action and never complained of the way it was defended. Shore knew about the indemnity agreement and "understood that he would be liable if he had been sent by a broker, sales agent or whatever."

There was also evidence that neither Mr. Murphy nor Mr. Pillsbury told Shore that "he was subject to defend" the case and that they were giving him an opportunity to defend. From the time of the sale up to December 13, 1957, Mr. Murphy did not inform Shore or his attorney that Shore should defend and was being given the opportunity; "they expected to win . . . the evidence was a surprise"; about a month after the trial Mr. Murphy decided to notify Shore that "he had better start to defend the action." Mr. Murphy had not notified Shore before "because Shore was notified previously of the pendency of the suit" by Mr. Murphy's clients.

The jury's verdict for Gentile was returned on November 14, 1957. On December 13, 1957, Mr. Murphy wrote Shore, with copy to his attorney, that the case had been submitted solely on the issue whether Gentile caused the sale; the verdict had resolved the issue against Shore; a motion for a new trial "to protect your interests" had been denied; the time to file a bill of exceptions had been extended; that it was the attorneys' opinion that the verdict would not be set aside; and "we now call upon you under the provisions of Paragraph 9 of the sales agreement to indemnify Mrs. Pasquale . . . . We have advised . . . [her] not [to] appeal

. . ., that being your responsibility if you see fit to do so. You may also . . . attempt to effect a settlement.'' On November 20, 1958, Mr. Pillsbury wrote Shore, with copy to his attorney, referring to the December 13, 1957, letter and notifying that ''we are negotiating a settlement of the claim . . . for . . . $6,000. . . . We now look to you to pay us the sum of $6,000 plus costs and disbursements . . . in the suit brought by . . . Pasquale . . . .''

A transcript of the judge's charge in the earlier action was an exhibit, and the judge charged in this action that the jury were to determine therefrom if the Gentile case had been submitted to the jury on the issue of efficient cause or on the issue of exclusive agency.

The defendant's motion for a directed verdict was properly denied.

We hold that, for reasons stated in following paragraphs, Borgatti's oral notice to Shore was sufficient to make the earlier judgment binding on Shore. The express requirement of the contract to give ''opportunity to defend'' imposed no greater duty in respect of notice and tender of defence than do the established rules for binding an indemnitor to the result of a pending action.

In *Consolidated Hand-Method Lasting Mach. Co.* v. *Bradley,* 171 Mass. 127, 132, this court, with citation of earlier cases, said that the notice, whatever its form, ''should call upon the person notified to come in and defend the suit, or should offer him an opportunity of doing so. The party notifying cannot insist upon retaining control of the defence . . .. [In substance there must be notice] that if he does not defend . . . he will be held responsible for the result.'' Although this statement was not necessary to the decision, the case ''is a leading case on the subject,'' *Buhl* v. *Viera,* 328 Mass. 201, 203, and in plain terms it shows the great advisability of unequivocal written notice to the party sought to be charged. Nevertheless an oral notice may serve (*Richstein* v. *Welch,* 197 Mass. 224, 231; see *Chamberlain* v. *Preble,* 11 Allen, 370, 374; *Bowditch* v. *E. T. Slattery Co.* 263 Mass. 496, 499), and no particular form of words is necessary if it is ''evident that the giver intended to charge the receiver therewith.'' 263 Mass. 496, 499.

In *Boston* v. *Worthington,* 10 Gray, 496, a written notice was sustained which did not expressly ask the defendants to take over the defence, where they were present at the trial and testified. The court in the *Bradley* case (p. 132) said that this went "to the very verge of the law." The notice which in the *Bradley* case was said to be inadequate, because giving no opportunity to assert control (p. 132), told the indemnitors about the suit (p. 129) and that the indemnitees expected to win and would look to their indemnitors if they lost, and asked the indemnitors to "assist" in the defence. In the *Worthington* case (p. 497), the notice included these words: "You will please to take notice that the city will hold those responsible who had the charge and custody of the place of the accident. You will govern yourselves accordingly."

The earlier cases are reviewed in *Buhl* v. *Viera,* 328 Mass. 201, in which this court held that notice is unnecessary where the indemnitor actively defended an action against him tried with the action against the indemnitee but did not object to a discontinuance, after all parties had rested, of the action against him.

In *Richstein* v. *Welch,* 197 Mass. 224, 231–232, it was held, with citation, inter alia, of the *Bradley* case, that an oral notice which did not in terms tender a defence could be found sufficient by the jury in answer to a special question. The defendant's exceptions were sustained, inasmuch as the issue of fact of what was the ground of the prior judgment should also have been left to the jury. There was, nevertheless, a holding on the notice point as the case went back for another trial.

The evidence in the *Richstein* case was similar to the evidence here. The action in that case was on a covenant of warranty in a deed of real estate. The evidence held sufficient was that the plaintiff's husband, before the trial, had shown the indemnitor the writ and had said (p. 227), "It is for you to take care of it, not me or my woman"; the indemnitor had said he did not care about Mrs. Richstein being sued as he had "nothing to do with that place any more," and the indemnitor had been present and testified

at the trial. This court said (p. 231) that if the evidence was believed the indemnitor "was fully informed . . . [in the premises and requested] to contest the claim."

The *Richstein* case shows that, to some extent at least, what the notice must contain in substance may be found therein by reasonable implication. The jury in the case at bar could have found that Borgatti had authority to speak for Pasquale and that there was implicit in his words a call on Shore to perform his "duty to defend" and a tender of the opportunity to do so. It is not unfair in the circumstances to cast on Shore the burden of asking for the writ and taking over the defence. Shore's obligation to indemnify was explicit and unquestioned. It was not imposed in law because of a relationship. See, for example, *Hollywood Barbecue Co.* v. *Morse,* 314 Mass. 368, 370, and cases cited. That Shore said he "did not want to talk too much about it" made not unreasonable the jury's reliance on the implications of Borgatti's words. Borgatti's testimony that he did not tell Shore "he should defend" did not take all the force from his prior testimony. The meaning, on which the plaintiff can rely, may be only that Borgatti, although he used the words "it was his duty" did not in terms say to Shore, "You should defend."

The notice by Borgatti, it could be inferred, was given prior to the time when the case reached the formal stage of a case in control of counsel. There is, of course, evidence warranting the conclusion that once the case was in their hands, the attorneys gave no indication of expectation that Shore would take over the defence or of offer to turn over the defence to him. Their tenders after verdict confirm that they were intending to be in charge in the earlier stages of a case they expected to win. Their attitude, however, does not destroy the force of the threshold talk between Borgatti and Shore as the jury could have found it.

It is no bar to recovery under count 1 that the prior judgment was by consent. See *Macheras* v. *Syrmopoulos,* 319 Mass. 485, 486.

The February 23 agreement did not in terms displace the February 8 agreement. On the contrary, it spoke as a sup-

plement thereto and the addition of Shore's wife as a party did not require a ruling that the earlier agreement had been superseded.

Pasquale's indemnification undertakings in the two agreements were relative to the pharmacy business and did not wipe out or diminish Shore's indemnity undertaking in paragraph 9. There was no error in instructing that "rights and liabilities of the parties . . . are to be determined by paragraph 9" and in failing to refer to paragraph 7 or to the February 23 agreement.

It is settled that a seller, by selling the property herself, may without liability to the broker revoke not only an exclusive agency, *Des Rivieres* v. *Sullivan,* 247 Mass. 443, 446, but also an exclusive right of sale. *Bartlett* v. *Keith,* 325 Mass. 265, 267. The charge in the earlier case was categorical that recovery therein could be had only if the jury found that Gentile was the efficient cause of the sale, the evidence doubtless showing, as did the evidence here, that Pasquale did not make use of another broker. There was, therefore, no question of fact for this jury in this aspect and an instruction was in order that the earlier case had been submitted on efficient cause and not on exclusive agency. But the defendant was not harmed by the instruction which left the question to the jury with the transcript of the charge. In finding for the plaintiff, the jury showed that it correctly read the instruction in the prior case.

The defendant contends that evidence of the plaintiff's deceit, in not disclosing Gentile's interest, was binding on her, and establishes Shore's right to avoid his indemnity undertaking. There is nothing in this on the evidence, and, conclusively, such an affirmative defence was not set up in the answer. *Barron* v. *International Trust Co.* 184 Mass. 440, 443. *Stow* v. *Commissioner of Corps. & Taxn.* 336 Mass. 337, 341, and cases cited.

There is nothing for us to review in the denial of the defendant's motion for a new trial. *Connelly* v. *Scarpa, post,* 771.

*Exceptions overruled.*