Trustees of the N. Y., N. H. & H. R.R. *v.* Tileston & Hollingsworth Co.

TRUSTEES OF THE NEW YORK, NEW HAVEN AND HARTFORD
RAILROAD COMPANY[1] *vs.* TILESTON & HOLLINGSWORTH
COMPANY.

Suffolk.　January 11, 1963. — April 5, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL,
& REARDON, JJ.

*Indemnity.　Contract,* Of indemnity.

Where it appeared that a manufacturer agreed "to indemnify and hold
harmless" a railroad respecting "injury from any act or omission"
of the manufacturer to employees of the railroad while on or about
a sidetrack maintained by the manufacturer adjacent to a platform on
its land, that a brakeman of the railroad was injured when he slipped
and fell as he was boarding a freight car on the sidetrack from the plat-
form after walking about eighty feet over a white substance accumulated
on the platform which made his shoes "slippery," and that, after numer-
ous communications between the railroad, the manufacturer, and the
manufacturer's insurance carrier respecting a claim for such injuries
by the brakeman against the railroad, the insurance carrier denied lia-
bility and the railroad made a reasonable settlement of the claim without
suit, the manufacturer was obligated to reimburse the railroad for the
amount paid in settlement even though there had been no adjudication
of any tribunal that the railroad was liable to the brakeman and it had
made no "demand or request" upon the manufacturer to defend the
brakeman's claim.

CONTRACT.　Writ in the Superior Court dated January
15, 1958.

The action was heard by *Smith, J.*

*Thomas H. Mahony,* for the defendant, submitted a brief.
*David W. Walsh* for the plaintiffs.

SPIEGEL, J.　This is an action of contract based upon an
alleged breach of a written agreement for the construc-
tion and maintenance of a railroad sidetrack and providing
for indemnification.　The case was referred to an auditor
whose findings of fact were not to be final.　His report was

---

[1] The present trustees, predecessor trustees, and the railroad company are
herein referred to as the plaintiff.

introduced in evidence at the trial, before a judge of the Superior Court sitting without a jury, supplemented by exhibits and oral testimony. The judge found for the plaintiff in the sum of $16,923.86. The defendant took exceptions to the denial of certain motions and requests for rulings. At the request of the defendant the judge reported the case to this court for decision. The parties stipulated "that if the Supreme Judicial Court determines that the plaintiff is entitled to recover, the Clerk of the Superior Court is to enter judgment for the plaintiff for the sum of $16,515.12 and interest thereon from October 16, 1957."

We herewith condense the pertinent findings of the trial judge. On December 28, 1945, the parties entered into a written contract by the terms of which the plaintiff was to construct a sidetrack 405 feet in length on the defendant's land. The contract included the following relevant sections: "5. (b) The Contractor [the defendant] also agrees to indemnify and hold harmless the . . . [plaintiff] for loss, damage or injury from any act or omission of the Contractor, or the Contractor's employees, or agents, to the person or property of the parties hereto and their employees, and to the person or property of any other person or corporation, while on or about said sidetrack; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally." "7. The Contractor shall maintain and keep said sidetrack in proper condition for the safe and efficient handling of cars thereon, including the removal of snow and ice therefrom, as indicated in red on said print, or shall pay to the Trustees the cost of such repairs and maintenance as may be made thereon by them in the exercise of their judgment."

The defendant "was engaged in the manufacture of paper and paper products and in its process used clay and starch at its plant in Hyde Park. As accessory to the plant operation it had a platform adjacent to the side track here involved, where it received materials used in its operations. The clearance between the edge of the platform and the side of a freight car on the track was estimated to be 7 or 8

inches in width and approximately level with the box car floors.'' The contract was in effect on December 12, 1955, when the plaintiff was engaged in ''spotting'' a freight car at a point on the track adjacent to the platform designated by one of the defendant's foremen. This platform was covered with a white substance which had accumulated on it. One of the plaintiff's employees, a brakeman named Morrissey, had the duty of boarding the moving freight car and setting the brake on it so that it would stop at the designated place. In attempting to effect this result Morrissey passed along the defendant's platform for approximately eighty feet over the white substance, which he had seen there before and knew to be there immediately previous to his accident, and as the freight car approached he boarded an iron ladder on the side of the freight car, getting onto it from the platform, and then ''switched'' to another ladder which led to the top of the freight car. As Morrissey neared the top, he ''slipped and fell to the ground and was injured.'' There was testimony that the platform was covered with ''something that made . . . [Morrissey's] shoes slippery.''

On January 9, 1957, the plaintiff wrote to the defendant ''advising that Morrissey had been injured 'while working on your side track at Hyde Park, Massachusetts, under circumstances which (we) believe would make you liable under the provisions of your side track contract,' '' and requested the defendant to refer the matter to its insurance carrier. This letter was acknowledged on January 11, 1957, by the defendant, which ''stated that it had referred the matter to its insurance carrier.'' On March 26, 1957, at the latter's request, the plaintiff furnished the insurance carrier, Liberty Mutual Insurance Company (Liberty), with copies of medical reports. On August 6, 1957, the plaintiff gave Liberty a transcript of the testimony of the train crew, a copy of a memorandum requesting authority to dispose of the claim, and a statement of the medical and hospital bills paid and outstanding. Another letter dated August 13, 1957, was sent to Liberty ''to the effect that further medical and

hospital bills had been paid.'' In a letter dated August 27, 1957, the plaintiff requested ''advice as to Liberty's position as Morrissey was pressing for an answer.'' On September 23, 1957, Liberty wrote to the plaintiff ''confirming a previous telephone communication and stated that it was unwilling to contribute to the settlement of the claim of Morrissey for injuries arising out of the alleged accident of December 12, 1955.'' On September 23, 1957, the plaintiff again wrote to Liberty advising ''that they had disposed of the Morrissey claim and looked to Liberty for reimbursement.'' On October 16, 1957, the plaintiff, by its attorney, wrote to the defendant making a demand upon it for reimbursement under the indemnity clause.

The auditor made the following findings: Morrissey was in the exercise of due care and suffered injuries; there was no negligence on the part of his fellow employees; the defendant was negligent in causing or permitting a slippery substance to accumulate and remain on its platform ''at a time when it knew or ought to have known that freight cars were being delivered to it and in such delivery the plaintiff's employees would use the platform''; the plaintiff acted prudently and in good faith in making a settlement which was fair and reasonable in order to discharge any legal liability of the plaintiff to Morrissey under the Federal Employers' Liability Act; the settlement was made without judgment of any court or order of any judicial or quasi-judicial body, board or authority; and ''finally that no specific demand was ever made by . . . [the plaintiff] upon . . . [the defendant] to assume the defense of any claim made by Morrissey.''

The trial judge ruled that the rights of Morrissey, as an employee, rest on the Federal Employers' Liability Act, 45 U. S. C. (1958) § 51 et seq., and that liability is to be determined in the light of the plaintiff's exposure to the provisions of that act. *Chicago, R. I. & Pac. R.R.* v. *Dobry Flour Mills, Inc.* 211 F. 2d 785, 788 (10th Cir.).

The trial judge's ''Rulings and Findings'' include the following: ''I find and rule that the defense of assumption

345 Mass. 727                                           731

Trustees of the N. Y., N. H. & H. R.R. *v.* Tileston & Hollingsworth Co.

of the risk and the contributory negligence of Morrissey are not open to Tileston in this litigation, and even if the same were to be considered, the evidence does not sustain the burden of proof as to these defenses. I find and rule that on all the evidence, including the Auditor's Report, together with reasonable inferences therefrom, . . . [the plaintiff] was not bound to make any formal and explicit demand upon . . . [the defendant] in addition to the information voluntarily given to Liberty Mutual Insurance Company, . . . [the defendant's] insurance carrier. I find and rule on all the evidence, with the inferences therefrom, that . . . [the plaintiff] in good faith made a reasonable settlement of the personal injury claim of Morrissey within the time during which Morrissey could have brought an action under the Federal Employers' Liability Act."

The judge denied the defendant's "motion" that "upon all the evidence, the law and the pleadings . . . the plaintiff is not entitled to recover." Exceptions to the defendant's requests numbered 1, 3, and 4[1] are based substantially upon the same grounds as the "motion." There is no need to consider them separately. The defendant, in support of its position, argues that the plaintiff had the burden of proving "A prior effective adjudication by a competent legal tribunal obligating the plaintiff to pay to Morrissey the sum of money for which it seeks reimbursement or indemnification from the defendant." We are not persuaded. If we were to sustain this contention it would deny an indemnitee the right to make a reasonable settlement with a claimant when the indemnitor refuses to participate in the matter. In *Berke Moore Co. Inc.* v. *Lumbermens Mut. Cas. Co., ante*, 66, 70, we stated that "an insurance company which without right has refused to defend an action against its

---

[1] "1. The plaintiff is not entitled to recover from the defendant."

"3. The plaintiff, to recover under the contract in question, had the burden of proving a judgment, decree or order of some competent legal tribunal directing the plaintiff to pay Morrissey a specific sum of money upon a litigated claim for damages or compensation.

"4. The plaintiff was not obliged to pay Morrissey any money as damages for personal injury under the Federal Employers' Liability Act unless its negligence was a proximate cause of said personal injury."

insured no longer can insist upon the case being carried to judgment against the insured.'' The insured, who is in a position comparable to that of the indemnitee here, ''should have full liberty of determination whether to settle or to try. . . . [It] should be able to take into consideration the likelihood of success or failure, the cost, uncertainty, delay, and inconvenience of trial as compared with the advantages of settlement. What is reasonable to do . . . [it] should be permitted to do.'' We think the same considerations control here. See *New York Cent. & Hudson River R.R.* v. *T. Stuart & Son Co.* 260 Mass. 242, 249, and cases collected in annotation, 128 A. L. R. 565 and annotation, 67 A. L. R. 2d 1086. Morrissey had a prima facie claim against the railroad even though the danger involved was caused by an adjacent property owner, *Ellis* v. *Union Pac. R.R.* 329 U. S. 649, 651; *Chicago, R. I. & Pac. R.R.* v. *Dobry Flour Mills, Inc.* 211 F. 2d 785, 788 (10th Cir.), and even though Morrissey may not have been engaged in interstate commerce at the moment of injury. *Southern Pac. Co.* v. *Gileo,* 351 U. S. 493, 499. *Reed* v. *Pennsylvania R.R.* 351 U. S. 502, 505. When the defendant's insurance carrier denied liability, the plaintiff was entitled to consummate a fair and reasonable settlement with the claimant.

The defendant also excepted to the denial of its requested ruling numbered 2 that the plaintiff ''had the burden of proving a demand or request made upon the defendant to take over the defense of a pending law action or legal proceeding brought against the plaintiff by Morrissey.'' In addition to the discussion, *supra,* we point out that the indemnitee need give the indemnitor merely ''notice and an opportunity to defend'' in order to bind the indemnitor to the result of a settlement or judgment concluded in the absence of the indemnitor. *Miller* v. *United States Fid. & Guar. Co.* 291 Mass. 445, 449. *Buhl* v. *Viera,* 328 Mass. 201, 203. *Pasquale* v. *Shore,* 343 Mass. 239, 243–244. The contract in question did not require a ''demand or request'' nor are we aware of any law which necessitates such a requirement. The numerous communications between the plain-

tiff, the defendant, and the defendant's insurance carrier, culminating in the latter's denial of liability, make it clear that sufficient "notice and an opportunity to defend" were given.

We see no merit in the exception to the denial of the defendant's motion to strike certain portions of the auditor's report. The defendant's argument on this issue, as well as other contentions made by it and not detailed in this opinion, do little more than challenge the sufficiency of the evidence. The record furnishes extensive support for the conclusions reached by the auditor and the trial judge. There was no error.

*Exceptions overruled.*
*Judgment for plaintiff in*
*accordance with stipulation.*