Kern, Leila R., J.
INTRODUCTION
This action arises from an exclusive listing agreement between a broker, Sunbelt Financial Group, LLC, and a business, North Reading Hardware and Paint Supply, Inc. and Hardware’s sole proprietor, Paul M. Goriansky (the defendants). Sunbelt asserts that the defendants breached the listing agreement and engaged in unfair business practices in their dealings with Sunbelt. Before this Court is the defendants’ Motion to Dismiss. For the reasons that follow, that motion will be ALLOWED in part and DENIED in part.
BACKGROUND
The following facts are taken from the Complaint and exhibits referenced therein. The Court treats the allegations of the Complaint as true for the purposes of this motion only. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). On May 1, 2008, Sunbelt, Hardware, and Goriansky entered into the listing agreement. The listing agreement gave Sunbelt the exclusive right to sell or contract to sell the business assets of Hardware, including certain real estate.
*457 The listing agreement identified Hardware as the “Seller” and Goriansky as the “Client.” The listing agreement provided the following compensation structure for Sunbelt:
Seller agrees to pay broker at closing a fee as follows:
Business commission: 10%, with a minimum of $10,000.00.
Real estate commission: 5%.
The seller and the client are jointly and severally responsible for the transaction fees.
The listing agreement further provided that “Seller agrees that if this listing is cancelled or withdrawn from sale during the listing term by Seller, the Seller shall pay Sunbelt a termination fee of three-and-a-half (3.5%) [sic] of the gross offering price set forth above.” There was no gross offering price specified in the listing agreement at the time it was signed.
By its terms, the listing agreement commenced upon signing and terminated 12 months after Sunbelt received “all pertinent business information” needed to market Hardware’s property. Sunbelt received that information on June 18, 2008. Sunbelt established a gross listing price of $1,395,000.
As a result of Sunbelt’s marketing efforts, the defendants signed an offer to purchase from William Bannister of Chelmsford, Massachusetts. The defendants signed a purchase and sale agreement on January 15, 2009, but the sale did not close.
In April 2009, the defendants informed Sunbelt that they did not want to be contacted again about the sale of Hardware. In reply, Sunbelt told the defendants that there were other interested buyers and requested Hardware’s cooperation in providing updated business information to assist Sunbelt in marketing Hardware’s property.
The defendants refused to meet with Sunbelt or any prospective buyers throughout April 2009. They also ignored repeated requests for updated business information. On May 5, 2009, the defendants sent a “termination notice” to Sunbelt purporting to terminate the listing agreement as of May 1, 2009.
In reply, Sunbelt requested a payment of $48,825.00, as the termination fee provided for in the listing agreement. To date, that sum has not been paid.
DISCUSSION
1.Breach of contract against Goriansky
Sunbelt contends that Goriansky is jointly and severally liable for the termination fee called for in the listing agreement because he signed the contract as the “Client.” However, the terms of the listing agreement expressly state that “the Seller shall pay Sunbelt a termination fee . . .” Hardware, not Goriansky, is explicitly defined in the listing agreement as the Seller.
Sunbelt claims that the listing agreement is ambiguous as to Goriansky’s personal liability because it provides elsewhere that Hardware and Goriansky are jointly and severally liable for “transaction fees.” “Contract language is ambiguous where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.” Bank v. Thermo Elemental Inc., 451 Mass. 638, 648 (2008) (internal quotation omitted).
Contraiy to Sunbelt’s arguments, the listing agreement is not ambiguous. While the phrase “transaction fees” is not defined in the listing agreement, it appears in the same paragraph setting forth Sunbelt’s commission rates in the event of a sale of Hardware’s business. Limiting the “transaction fees” to Sunbelt’s commission in the event of a sale accords with the commonsense understanding of the word “transaction,” which contemplates some kind of completed business agreement. See Boston Gas Co. v. Century Indem. Co., 454 Mass. 337, 355 (2009) (contractual terms construed in their ordinarily and usual sense). No such agreement or transaction took place.
The provisions governing “termination fees” appear in a different paragraph. That paragraph includes nothing to make Goriansky jointly and severally liable with the Seller (Hardware). Under the clear terms of the listing agreement, Goriansky was jointly and severally liable only for transaction fees, which Sunbelt does not pursue. There is no ambiguity in the contract, and Goriansky is not personally liable for the termination fee.
2.Violation of chapter 93A against both defendants
Sunbelt accuses the defendants of unfair acts and practices insofar as they refused to cooperate in providing information to be used by Sunbelt in its efforts to sell Hardware. “[A] knowing violation of contractual obligations for the purpose of securing unwarranted benefits" can constitute a violation of c. 93A. Diamond Crystal Brands, Inc. v. Backleaf, LLC, 60 Mass.App.Ct. 502, 507 (2004).
The Complaint does not allege that Hardware’s breach of its obligation to cooperate with Sunbelt in providing updated information was intended to secure unwarranted benefits. Nor do any documents referenced in the Complaint suggest that this was the case. Violation of the terms of a commercial agreement, without more, does not constitute a violation of c. 93A. Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 99-100 (1979).
3.Breach of contract against Hardware
Hardware does not contest that it has not paid the termination fee but submits that it is unenforceable because 1) the terms of the listing agreement did not specify a gross offering price at the time it was signed, and 2) the termination fee constitutes an unenforceable penalty clause.
*458 The listing agreement was signed before a gross offering price was calculated because Hardware had not yet provided the information necessary for Sunbelt to calculate a gross offering price. In order for a gross offering price to be established at the time the listing agreement was signed, Hardware would have needed to expend time and resources gathering that information and submitting it to Sunbelt without any assurance that Sunbelt would use that information to provide services on reasonable terms.
Contracts are construed to give effect to the parties’ intentions, Chicago Bridge & Iron Co. v. Lloyd’s, 59 Mass.App.Ct. 646, 656 (2003), and to avoid absurd results. See Lawrenson v. Worcester Lunch Car & Carriage Mfg. Co., 300 Mass. 543, 551 (1938). Here, the clear intent of the parties was to determine a gross offering price after the formation of the listing agreement using the information submitted by Hardware.
Whether a liquidated damages provision is an unenforceable penalty clause depends on whether the damages provided for are a reasonable forecast of harm expected to occur in the event of a breach. NPS, LLC v. Minihane, 451 Mass. 417, 420 (2008). Questions of reasonableness are typically reserved for the jury. Foley v. Polaroid Corp., 400 Mass. 82, 92 (1987).
4. Breach of the implied covenant of good faith and fair dealing against both defendants
The purpose of the implied covenant of good faith and fair dealing “is to ensure that neither party interferes with the ability of the other to enjoy the fruits of the contract.” Eigerman v. Putnam Invest., 450 Mass. 281, 287 (2007) (internal quotation omitted). A breach of the implied covenant typically occurs “when one party violates the reasonable expectations of the other.” Id. at 287-88.
Here, the defendants deprived Sunbelt of the fruits of the listing agreement by refusing to cooperate in providing updated information about its business. This can be said to have frustrated Sunbelt’s efforts to sell Hardware’s property. Furthermore, the defendants violated Sunbelt’s reasonable expectation that it would cooperate in Sunbelt’s efforts to perform under the listing agreement by attempting to sell Hardware’s property.
CONCLUSION AND ORDER
For the foregoing reasons, the Motion to Dismiss is ALLOWED as to all of Sunbelt’s claims under G.L.c. 93A and to Sunbelt’s claim against Goriansky for breach of contract. In all other respects, the Motion to Dismiss is DENIED.