C. B. HANCOCK *v.* W. CODY FLETCHER

(No. 7567)

Submitted May 2, 1933.   Decided May 9, 1933.

*Hartley Sanders,* for plaintiff in error.
*McClaugherty & Lewis,* for defendant in error.

MAXWELL, PRESIDENT:

This is an action by a stock broker against a customer for $275.00 lost in the sale of certain shares of corporate stock on the open market by the broker allegedly for the account of the customer. The court directed a verdict for the plaintiff for the amount claimed and entered judgment thereon. Writ of error was awarded the defendant.

A few days prior to the 7th of April, 1932, conversation was had between the plaintiff and defendant with respect to the prospective purchase by the defendant, of the plaintiff,

of some shares of preferred stock of the Appalachian Electric Power Company, a corporation.

The parties concur that in a telephonic conversation April 7, 1932, the plaintiff informed the defendant that a block of fifty shares of said stock had become available to the plaintiff at the price of $95.00 per share; that the defendant then told the plaintiff he would not purchase fifty shares but would purchase twenty-five shares at the said price. Defendant further testifies that in said conversation he told the plaintiff that he (defendant) wanted the stock in his name, that he had had some trouble in making transfers of preferred stock in said company and would not accept the stock involved in the proposed purchase on the indorsement of some prior owner. On the other hand, the plaintiff testifies thus:

> "He said no, he didn't want but twenty-five. I said will you take twenty-five and he said yes. He said I want that stock in my name. I said Mr. Fletcher, I can't ship it sight draft attached in your name, it's not negotiable, you are the only man who can get money on it. He said oh, well, Mr. Hancock, I know that but I am busy in a church meeting now, and hung up. I admit he requested it to be in his name, but I do not admit the deal was contingent upon that, it is a trivial matter, recognized by dealers everywhere, if I deliver a stock properly endorsed, with stamps attached. * * * Mr. Fletcher requested the stock be in his name and I advised him that I couldn't ship it sight draft attached that way because it was non-negotiable. The stock was shipped * * *."

In the light of the trial court's finding for the plaintiff, this Court must consider the evidence in the aspect most favorable to the plaintiff. But, though we consider the plaintiff's said testimony in its most favorable aspect and give to it an interpretation carrying the strongest possible meaning for the plaintiff, it nevertheless gives recognition to the defendant's contention that his agreement to purchase the stock was accompanied by a condition that the certificate or certificates therefor should be in his name. The plaintiff undertakes to say in his testimony that such request or requirement of the defendant was inconsequential.

On the 12th of April, 1932, through the instrumentality of the plaintiff, a certificate for twenty-five shares of stock was sent to a bank at the place of residence of the defendant, and the defendant was notified that the stock had been thus forwarded in fulfillment of his order. On the same day the defendant refused to accept the stock because it was not issued in his name, and so informed the plaintiff by letter. On the 13th, after receipt of defendant's letter of the 12th, the plaintiff wrote the defendant that he (plaintiff) would procure the issuance of a new certificate in defendant's name. The following day, defendant wrote the plaintiff acknowledging receipt of the latter's communication of the 13th, and said: ''This is to advise that I am not further interested in any stock at this time.''

The plaintiff testified that when he received this last communication he had already forwarded the stock to the proper office for the purpose of having a new certificate issued in lieu thereof; that after receiving the communication of the 14th he undertook to countermand his order for the issuance of such new certificate and that he thought he had succeeded in making such countermand, but that the new certificate was in fact issued and mailed to him, reaching his office April 19th or 20th. The new certificate was thereupon immediately tendered to the defendant who refused to accept it. After formal notice by the plaintiff to the defendant that the stock would be sold on the open market for the latter's account if he refused acceptance, the plaintiff sold the stock on the market at $84.00 per share, incurring a loss of $275.00. For the amount of said loss the plaintiff sued the defendant and recovered judgment.

As already indicated, it appears from the plaintiff's own evidence that the defendant's offer or agreement to purchase the stock was accompanied by the request that it be in the defendant's name. At the very least, this is recognition of the fact by the plaintiff that the manner of the issuance of the stock was an element in the transaction. It was not for the plaintiff to say that such element or condition was unimportant and inconsequential, if, in fact, the contemplated purchaser, the defendant, imposed such condition. Whether such condition was imposed by the defendant is a question of fact

which could very properly be determined by a jury. But, certain it is, that in the light of plaintiff's admission that the manner of the issuance of the stock was an element of the transaction it cannot be said as a matter of law that the plaintiff should have recovery.

"In order that there may be a meeting of the minds which is essential to the formation of a contract, the acceptance of the offer must be substantially as made. There must be no variance between the acceptance and the offer." 6 Ruling Case Law 608. Of like import: 13 Corpus Juris, 266, sec. 59; *Virginia Hardwood Lumber Co.* v. *Hughes,* 140 Va. 249, 124 S. E. 283; *Weaver* v. *Burr,* 31 W. Va. 736, 744, 8 S. E. 743; *Bowers Co.* v. *Kanawha Valley Products Co.,* 100 W. Va. 278, 130 S. E. 284. In the latter case, the pertinent principle is thus stated in syllabus 2: "A party to whom an offer of contract is made must either accept it wholly or reject it wholly. A proposition to accept on terms varying from those offered is a rejection of the offer, and a substitution in its place of the counter proposition. It puts an end to the negotiation so far as the original offer is concerned."

Plaintiff takes the position that his departure from defendant's demand was inconsequential. He relies on the legal proposition that "before partial failure of performance of one party will give the other the right of rescission, the act failed to be performed must go to the root of the contract." That principle, of course, can not have basis on which to rest unless there has in fact been a contract made between the parties. That is just the difficulty here. The evidence does not disclose (certainly as a matter of law) that there was a meeting of minds; that the plaintiff accepted the defendant's offer as made. Hence no foundation for the principle which the plaintiff seeks to invoke.

We are of opinion, therefore, to reverse the judgment of the trial court, set aside the verdict and remand the case for a new trial.

*Reversed and remanded.*