375 S.E.2d 772

**STARK ELECTRIC, INC.**

v.

**HUNTINGTON HOUSING AUTHORITY, et al., and James Electric Co.**

No. 17667.

Supreme Court of Appeals of West Virginia.

Nov. 23, 1988.

James W. St. Clair, Marshall & St. Clair, Huntington, for Stark Elec.

Norman K. Fenstermaker, Susan E. Morton–Smith, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, for Huntington, WV Housing Auth., etc., et als.

PER CURIAM:

This is an appeal by Stark Electric Company, Inc. (Stark), from a final order of the Circuit Court of Cabell County dismissing its complaint for failure to state a claim upon which relief could be granted, pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.[1] Stark was the plaintiff below in a suit for damages for breach of a delayed construction contract. On appeal, Stark argues two primary points: (1) that there was a binding contract between Stark and the defendant Huntington, West Virginia Housing Authority (HHA), and (2) that the trial court improperly granted HHA's motion to dismiss. We find that the trial court did not err in granting HHA's motion to dismiss.

### I.

The defendant HHA is an agency of the City of Huntington. In early 1984, HHA decided to improve the electrical system in a low-income housing project, Marcum Ter-

---

1. It is clear from the record that discovery was undertaken by both parties and that the court considered this discovery, thereby making its ruling a summary judgment. Rule 12(b)(6) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and diposed of as provided in Rule 56[.]"

race. This work was funded through the Department of Housing and Urban Development (HUD).[2] After its architect prepared detailed plans and specifications, HHA sent out invitations to bid on the project. The bids were opened on August 29, 1984, and the low bidder was the defendant, James Electric Company.

Immediately after the bids were opened, a controversy arose over some informalities in James Electric's bid: (1) the certified check furnished as bid security was $1,000 less than the required 5 percent of the total bid; (2) no unit prices were provided for the base bid; (3) alternate cost items to be utilized in the event the bids exceeded the budget were submitted on James Electric's business stationery, rather than on the "alternate form" provided; (4) it erroneously added, instead of subtracted $9,000 for "alternate one," a deduction; and (5) HHA doubted the authenticity of the notary's signature, although no one questioned that the signatures verified were authentic.

HHA discovered these discrepancies and gave James Electric twenty-four hours to submit the required information and a new check for the bid security. James Electric complied with this request. Although it is not clear from the record, the notary was apparently contacted and verified that the signatures were authentic.

Concerned that the initial informalities in the James Electric bid might raise questions about the bidding process, HHA decided to defer awarding the contract until its regular meeting on September 11, 1984.[3] At the September meeting, representatives were present from both James Electric and Stark. Initially, general counsel for HHA presented his opinion which gave two options that HHA could follow: (1) reject the bid from James Electric as not fully com-

plying with the bid requirements and award the contract to Stark; or (2) find that the bid submitted by James Electric substantially complied with the bid requirements, waive the informalities, and award the contract to James Electric.

HHA decided to follow the first option and accept Stark's bid, which was approximately $32,000 higher than James Electric's, but conditioned its acceptance upon HUD's formal approval of the contract. This conditional acceptance was set forth in Resolution No. 652–84:

"BE IT RESOLVED: By the Huntington West Virginia Housing Authority that the execution of a contract by and between the Huntington West Virginia Housing Authority and Stark Electric, Inc., for the electrical distribution system at Project W.Va. 4–3, Marcum Terrace, in connection with Mod Project WV4–905, in a base bid amount not to exceed $1,048,423, be approved, *subject to HUD approval.*" (Emphasis added).

The next day Pat Lovely, the Executive Director of HHA, wrote HUD requesting approval to reject the bid of James Electric. HUD responded by letter dated September 13, 1984, which contained the following statement: "[I]t is the opinion of HUD legal counsel that the bid of James Electric in the amount of $968,200 substantially meets the bid documents. Therefore, this office cannot concur in your request." Both James Electric and Stark were notified by letters dated September 18, 1984, of HUD's refusal to accept the plaintiff's bid and that "no further action will be taken by the authority until the next regular meeting ... on Tuesday, October 9, 1984." At the October meeting, HHA adopted a resolution awarding the contract to James Electric subject to the approval of HUD.[4] The

---

**2.** Although Stark argues that the record is not clear as to HUD's role in the project, we find there was ample evidence from the bid documents and discovery depositions to show that it financed the project.

**3.** Pursuant to section 12 of the invitation to bid, HHA reserved "the right to waive any informalities or to reject any or all bids...."

**4.** Resolution No. 664–84 provided:

"BE IT RESOLVED BY The Huntington West Virginia Housing Authority: That the bid of James Electric Company, Inc., for Electrical System Improvements at Project W.Va. 4–3, Marcum Terrace, CIAP Modernization Program WV4–905, be and same is hereby accepted, and that the officers of this Authority be and they are hereby authorized to execute a contract with the same James Electric Company, Inc., for such electrical system improve-

contract was thus awarded to James Electric.

On October 31, 1984, the plaintiff filed suit in the Circuit Court of Cabell County against HHA, its directors, and James Electric. The complaint prayed for a writ of mandamus to compel HHA and its directors to cancel and annul the contract with James Electric and award it to the plaintiff; in the alternative, the plaintiff sought $200,000 in damages.

## II.

■ The core of Stark's argument is that HHA is bound by its instructions to bidders. Since there was nothing in the bid documents that stated HHA's acceptance would be conditioned on HUD's approval, it had no right to make such requirement. Stark ignores basic contract law.

It cannot be doubted that HHA's documents were an invitation to bid. The bidders such as Stark and James Electric in returning their proposals were making bids. The invitation to bid documents clearly indicated that HHA was not obligated to accept any of the bids.[5] The various contractors by returning their bids were making an offer to perform the work at the price stated in their bid documents.

Moreover, it is clear from W.Va.Code, 5–22–1 (1983), which relates to government construction contracts, that "the State and its subdivisions may reject all bids and solicit new bids on said project."[6] Thus, we conclude that HHA's acceptance of the Stark bid conditioned on HUD's approval did not create a binding contract. HHA's subsequent rejection of the bid due to HUD's refusal to approve, therefore, did not constitute a breach of contract.

■ It is rather universally accepted that where an offer is made and the person accepting the offer does not do so unequivocally, but conditions his acceptance, then no binding contract arises. We spoke to this point in *Bowers Co. v. Kanawha Valley Prod. Co.*, 100 W.Va. 278, 130 S.E. 284 (1925), where we stated in Syllabus Point 2:

> "A party to whom an offer of contract is made must either accept it wholly or reject it wholly. A proposition to accept on terms varying from those offered is a rejection of the offer, and a substitution in its place of the counter proposition. It puts an end to the negotiation so far as the original offer is concerned."

*See also* Syllabus Point 2, *Hancock v. Fletcher*, 113 W.Va. 624, 169 S.E. 457 (1933) (" 'The acceptance is always required to be identical with the offer, or there is no meeting of minds and no agreement.' 13 Corpus Juris, 267.");[7] Syllabus Point 3,

---

ments, in a base bid amount not to exceed $968,200.00, all subject to HUD approval."

**5.** For the pertinent language, *see* note 3, *supra.*

**6.** The relevant language of W.Va.Code, 5–22–1 (1983), provides:

"As used in this section, 'the state and its subdivisions' means the state of West Virginia, every political subdivision thereof, every administrative entity that includes such a subdivision, all municipalities and all county boards of education.

"The state and its subdivisions shall except as provided in this section solicit competitive bids for every construction project exceeding twenty-five thousand dollars in total cost. Following the solicitation of such bids, the construction contract shall be awarded to the lowest qualified responsible bidder, who shall furnish a sufficient performance and payment bond: Provided, That the State and its subdivisions may reject all bids and solicit new bids on said project."

It should be noted that there are a number of exceptions to this mandatory bid procedure, none of which is applicable to this case.

**7.** Admittedly, the language of Syllabus Point 2 of *Hancock* is probably too restrictive. Courts have recognized that there should be no material variance between offer and acceptance. *E.g., Hall v. Add–Ventures Ltd.*, 695 P.2d 1081 (Alaska 1985); *Hall v. Integon Life Ins. Co.*, 454 So.2d 1338 (Ala.1984); *Benton v. Shriver*, 254 Ga. 107, 326 S.E.2d 756 (1985); *Hough v. Harvey*, 410 N.W.2d 53 (Minn.App.1987); *Londoff v. Conrad*, 749 S.W.2d 463 (Mo.App.1988); *Gram v. Mutual Life Ins. Co. of New York*, 300 N.Y. 375, 91 N.E.2d 307 (1950); *Walker v. Goodson Farms, Inc.*, 90 N.C.App. 478, 369 S.E.2d 122 (1988); *Arnbruster, Inc. v. Barron*, 341 Pa.Super. 409, 491 A.2d 882 (1985); *Arguelles v. Kaplan*, 736 S.W.2d 782 (Tex.Civ.App.1987); *Benya v. Stevens & Thompson Paper Co.*, 143 Vt. 521, 468 A.2d 929 (1983); *Chittum v. Potter*, 216 Va. 463, 219 S.E.2d 859 (1975). Here, the acceptance was a material variance as it was conditioned upon HUD approval.

*Weaver v. Burr,* 31 W.Va. 736, 8 S.E. 743 (1888). *See generally* 17 Am.Jur.2d *Contracts* § 62 (1964); Annot., 3 A.L.R.2d 257 (1949).[8]

The circuit court was correct in dismissing Stark's cause of action for breach of contract.

AFFIRMED.

---

**8.** It is generally recognized that where an acceptance is conditioned upon qualifications or changes, and these are accepted by the original offerer, then a binding contract may occur. 17 Am.Jur.2d, *Contracts* § 66 (1964). Such an event did not occur in this case.