466 S.E.2d 782

Fred VANKIRK, West Virginia
Commissioner of Highways,
Plaintiff Below, Appellee,

v.

GREEN CONSTRUCTION COMPANY, an
Iowa Corporation, and The American In-
surance Company, a Nebraska Corpora-
tion, Defendants Below, Appellants.

No. 22791.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 20, 1995.

Decided Dec. 8, 1995.

Anthony G. Halkias, Jeff Miller, Legal Division, West Virginia Department of Transportation, Charleston, for Appellee.

Robert S. Brams, Gadsby & Hannah, Washington, DC, James K. Brown, Anthony J. Majestro, Jackson & Kelly, Charleston, for Appellants.

MILLER, Justice:

Green Construction Company (Green), an Iowa corporation, and The American Insurance Company (American), a Nebraska corporation, appeal from an order of the Circuit Court of Kanawha County, entered August 23, 1994, granting summary judgment to Fred VanKirk, West Virginia Commissioner of Highways (DOH). DOH filed a declaratory judgment action in the circuit court contending that Green, under its contract, and American, under its bond, were required to indemnify DOH for the amount awarded by the Court of Claims against DOH in favor of Elmo Greer and Sons, Inc. (Greer). The Court of Claims recommended and the West Virginia Legislature awarded compensation to Greer in the amount of $1,214,088.68. The circuit court found that Green and American had a duty to indemnify DOH for the amount awarded against it by the Court of Claims.

Green and American assert several errors. The first is the claim that the circuit court erred in granting *res judicata* or collateral estoppel to the Court of Claims' judgment. In addition, they assert such action violated their due process rights because they were not parties to the Court of Claims proceedings. Complaint also is made that the circuit court erred in finding that the indemnity contract with DOH required Green and American to indemnify DOH for the negligence. Upon review, we affirm the judgment of the circuit court.

I.

On May 14, 1984, DOH entered into a contract with Green for the construction of 27,551 linear feet of Interstate Route 64 in the area of the Bragg Interchange. On May 22, 1984, DOH entered into a contract with Greer for the construction of 12,899 linear feet of Interstate Route 64 from east of Glade Creek to the Bragg Interchange. Green's worksite overlapped with Greer's worksite for 1,050 linear feet. Green was to install a box culvert and perform special embankment work with a completion date of October 31, 1984. Afterwards, Greer was to complete the fill work. Greer could not complete its project until Green's work was complete.

As the result of delays, DOH asked Green several times to comply with its contractual obligations. DOH granted deadline extensions to Green that were not met. Greer then agreed to help Green complete Green's job. Green's delays caused Greer to incur additional construction costs which became the subject of the underlying Court of Claims

case. Moreover, Greer discovered several construction errors made by Green when Greer began its project. As a result, Greer had to correct those errors before it could proceed. This caused additional construction costs to Greer.

On January 6, 1987, Greer submitted a claim to DOH alleging damages in the amount of $3,211,602.59. These damages were described by Greer as "monetary losses stemming from, and directly attributable to the delay in the completion of the box culvert and special embankment ... by Green[.]" On January 16, 1987, DOH forwarded Greer's claim letter to Green, stating the claim was due to Green's "failure to meet the contract completion date for specific work on your project."

On October 27, 1987, Greer filed a claim against DOH in the Court of Claims. DOH's contract with Green included several save harmless clauses. Furthermore, American issued a contract bond which Green signed as principal and American as surety. It also provided they would save and keep harmless DOH from all losses caused by Green in the construction of the highway project.

On October 30, 1987, by certified mail, DOH provided Green and American with a copy of the complaint Greer filed in the Court of Claims. DOH informed both Green and American it was holding them responsible for any damages awarded to Greer. DOH communicated its expectation to be indemnified pursuant to Green's contract and the contract bond. Green was given thirty days to advise DOH regarding Green's desire to cooperate. American responded by letter dated November 18, 1987, advising DOH it had investigated the claim with its principal (Green). American indicated.it would "coordinate future involvement through them. Preliminarily, they have indicated an interest in assisting your department in the defense of this matter."

On July 5, 1988, Greer filed a complaint against Green in the United States District Court for the Southern District of West Virginia. In the federal complaint, Greer requested damages premised on three separate counts: (1) Greer claimed to be a third-party beneficiary of Green's contract; (2) Greer claimed Green breached an express agreement made with Greer; and (3) Greer claimed Green was liable to Greer based on promissory estoppel. Green filed a motion for summary judgment on each count, which the District Court granted by order dated May 9, 1990. The United States Court of Appeals for the Fourth Circuit affirmed the District Court's decision on September 10, 1991 in an unpublished opinion.

This federal court action appears to have delayed any substantial activity in the Court of Claims case filed by Greer in October, 1987. On April 15, 1991, Green's attorney sent a letter to DOH confirming a telephone conversation of that date. That letter acknowledged that Green did want to play a part in the conduct of DOH's defense in the Court of Claims. It concluded nothing would be done until the appeal in the Fourth Circuit Court of Appeals was decided. DOH's attorney wrote Green's attorney on April 24, 1991, reiterating that Green and American had contractual indemnity obligations with DOH on the Greer case in the Court of Claims and suggesting they assume DOH's defense. On July 22, 1991, Green's attorney responded, stating: "At this time, Green neither accepts the [DOH's] invitation to defend against the claim, nor admits any obligations to the Division of Highways."

Further contact ensued between DOH and Green about DOH's proposed filing of a declaratory judgment action against Green to determine Green's indemnity obligation to defend DOH. On October 25, 1991, Green's attorney wrote DOH in an attempt to dissuade it from filing suit. This action was followed by correspondence regarding a possible legal defense to be made by DOH in Greer's case in the Court of Claims. In September, 1992, the Court of Claims conducted a hearing in this matter with no participation by Green or American. The Court of Claims issued its opinion on December 11, 1992, and granted an award of $1,214,088.68 against DOH.

On March 16, 1992, DOH filed a complaint for declaratory judgment relief in the circuit court seeking to have the judgment of the Court of Claims imposed on Green and

American. This action was based on the written indemnity agreements. On June 2, 1992, DOH filed a motion for summary judgment. The circuit court entered its final order on August 23, 1994, and granted the motion for summary judgment against Green and American in the amount of $1,214,088.68. It is from this final order that Green and American appeal.

## II.

■ We begin by recognizing that our standard of review for a circuit court's granting of summary judgment is set out in Syllabus Points 1 and 2 of *Jones v. Wesbanco Bank Parkersburg*, 194 W.Va. 381, 460 S.E.2d 627 (1995):

"1. 'A circuit court's entry of summary judgment is reviewed *de novo*.' Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

"2. ' " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).' Syl. pt. 2, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)."

1. For example, paragraph 4 of the contract contains the following language: "CONTRACTOR agrees ... to save the DEPARTMENT harmless from all liability for damage to persons or property that may accrue during and by reason of acts or negligence of the CONTRACTOR, his agents, employees, or subcontractors if there be such."

2. The relevant portion of General Provision 107.14 states:

"RESPONSIBILITY FOR DAMAGE CLAIMS:
"The Contractor shall indemnify and save harmless the Department, its officers and employees, from all suits, actions, or claims of any character brought because of any injuries or damage received or sustained by any person, persons, or property on account of the operations of the Contractor; ... or because of any act or omission, neglect, or misconduct of the Contractor[.]"

## III.

■ We initially address the indemnity language in order to determine if an indemnity obligation exists. Obviously, if none exists, there would be no need to discuss the other alleged errors. In Green's contract with DOH, there are several provisions that contain indemnification language.[1]

In General Provision 107.14 of the standard specifications, which is a part of the contract, there also is language which requires Green to indemnify DOH against any claims or suits arising because of injuries or damage to any persons or property on account of the operations of the contractor. There is further language for indemnity against suits "because of any act or omission, neglect, or misconduct of the Contractor."[2]

■ Furthermore, the contract bond signed by Green as principal and American as surety, which binds them to the State of West Virginia (DOH) in the amount of $8,844,869.70, contains indemnity language. It requires Green and American to truly comply with the terms and conditions "of the road contract" and to "save harmless [DOH] from any expense incurred through the failure of said contractor ... to complete the work as specified, and for any damages growing out of the carelessness or negligence of said contractor ... [and] from all losses to it ... from any cause whatever ... in the manner of constructing said Road[.]"[3] This

3. More fully, the applicable language of indemnity in the contract bond is:
"shall save harmless the West Virginia Department of Highways and the State of West Virginia from any expense incurred through the failure of said contractor, including subcontractors, to complete the work as specified, and for any damages growing out of the carelessness or negligence of said contractor, his, their or its servants, agents and employees, or his subcontractors, their agents, servants, and employees, and shall fully pay off and discharge and secure the release of any and all mechanics' liens which may be placed upon said property by any subcontractor, laborer or material men, and *shall also save and keep harmless the West Virginia Department of Highways and the State of West Virginia from all losses to it or them from any cause* whatever including patent, trade-mark, and copyright infringements in the manner of constructing said Road[.]" (Emphasis added).

indemnity language, particularly the last portion providing "from all losses to it . . . from any cause whatever" in Green's construction of the road, undoubtedly is broader than the other two provisions cited above.[4]

■ Several points are argued by Green and American to avoid the express indemnity language. One argument is that there was a provision for liquidated damages of $300 a day for failure to complete the project by the contract due date which Green and American claim limits their liability to this amount.[5] However, there is no language in this provision which states it is to be the exclusive remedy for all damage claims arising from Green's construction contract. It is obvious that the liquidated damage provision was for any delay by Green in finishing the project by the contract completion date. We believe the liquidated damage clause was entirely separate from the claim made by Greer against DOH that Green's delay in completing its contract caused Greer to suffer substantial costs over and above its contract price. It generally is held that a liquidated damage clause for delay in completing contract work does not preclude the injured party from recovering compensatory damages under the contract unless the liquidated damage clause expressly limits the right to such other damages. As explained in *Meyer v. Hansen*, 373 N.W.2d 392, 395 (N.D.1985), "[a] provision for liquidated damages will not prevent recovery for actual damages for events which are not covered by the liqui-dated damages clause, unless the contract expressly provides that damages other than those enumerated shall not be recovered." (Citations omitted). *See also Lawson v. Durant*, 213 Kan. 772, 518 P.2d 549 (1974); *Spinella v. B Neva Inc.*, 94 Nev. 373, 580 P.2d 945 (1978). *See generally* 25 C.J.S. *Damages* § 114 (1966).

■ Green also argues as a defense that its contract (as well as Greer's contract) included General Provision 105.7 which dealt with cooperation among contractors. Under this provision, each contractor agreed to "protect and save harmless [DOH] from any and all damages or claims that may arise because of inconvenience, delay, or loss experienced by him because of the presence and operations of other contractors working within the limits of the same project."[6] Green contends this clause should have exonerated DOH in the Court of Claims and prevented Greer's recovery for excess costs attributed to Green's work. In its brief, DOH claims that it did assert the language of General Provision 105.7 in the Court of Claims as a defense, but the Court refused to consider it as a bar to Greer's claim.

Green and American do not controvert DOH's assertion, but contend that DOH had reservations about the efficacy of this defense. Therefore, Green and American argue a conflict was created between its position that General Provision 105.7 was a bar to Greer's suit in the Court of Claims and DOH's reservations as to the bar. Green

---

4. It is generally recognized that under this type of bond both the principal (Green) and its surety (American) are bound to the State of West Virginia (DOH). As we explained in part of Syllabus Point 3 of *United States Fidelity and Guaranty Co. v. Hathaway*, 183 W.Va. 165, 394 S.E.2d 764 (1990): "There is a vital distinction between a contract of suretyship and a contract of indemnity. In a contract of suretyship the obligation of the principal and his surety is original, primary, and direct, and the surety is liable for the debt, default, or miscarriage of his principal[.]"

5. The relevant language of the liquidated damage paragraph from General Provision 108.7 of Green's contract states: "[DOH] will assess liquidated damages against the Contractor for each calendar day that any work remains uncompleted after the contract time specified for completion of the work, subject to such extensions of contract time as may be allowed by 108.6."

6. More fully, the pertinent portion of General Provision 105.7 states:

"When separate Contracts are let within the limits of any one project, each Contractor shall conduct his work so as not to interfere with or hinder the progress or completion of the work being performed by other contractors. Contractors working on the same project shall cooperate with each other as directed.

"Each Contractor involved shall assume all liability, financial or otherwise, in connection with his Contract and shall protect and save harmless [DOH] from any and all damages or claims that may arise because of inconvenience, delay, or loss experienced by him because of the presence and operations of other contractors working within the limits of the same project."

and American now claim this alleged conflict of interest precluded their representation of DOH from an ethical standpoint. We reject this argument on several grounds. First, there is nothing in the correspondence by Green and American that ever advised DOH it was on this basis that they declined to indemnify it. Second, DOH did assert this provision in the Court of Claims. Green and American do not claim that DOH's defense of the suit was collusive.

■ Finally, Green asserts that the indemnity language is only for liability arising from damages or losses through injury to persons or property. As support, Green cites two cases where courts held the involved indemnity language was not sufficient to cover economic losses. *E.g., Fairbanks North Star Borough v. Roen Design Assocs., Inc.,* 727 P.2d 758 (Alaska 1986),[7] and *Friedman, Alschuler and Sincere v. Arlington Structural Steel Co., Inc.,* 140 Ill.App.3d 556, 95 Ill.Dec. 87, 489 N.E.2d 308 (1985).[8]

In *Fairbanks North Star Borough,* the borough entered into a design contract with Roen for the layout of a subdivision. However, when work was started by a contractor to build roads in the subdivision, design defects were encountered. The contractor sued the borough and Roen. The borough, in turn, sought to obtain indemnification from Roen. The Alaska court found the indemnity language focused only on " 'injuries or damages to persons or property,' " which it concluded "limit[ed] indemnification to claims and liability based on physical injury or damage to persons or tangible property." 727 P.2d at 760. (Emphasis deleted).

The Illinois court in *Friedman, Alschuler and Sincere, supra,* came to much the same conclusion where an architectural firm sought to obtain indemnity from subcontractors who installed defective material in a building, causing it to partially collapse. The architectural firm settled with the building's owner and pursued indemnity under its contract as the general construction manager of the building. The court focused on the indemnity language against loss and damage " 'on account of death, injuries, damages, or loss to persons ... or property.' " 140 Ill. App.3d at 559, 95 Ill.Dec. at 88, 489 N.E.2d at 309. It found this language "limit[ed] indemnification to personal and property damages, the economic damages alleged by [the architectural firm] are not recoverable here[.]" 140 Ill.App.3d at 559, 95 Ill.Dec. at 89, 489 N.E.2d at 310.

■ It may well be that if the only indemnity language that DOH had to rely upon was that contained in paragraph 4,[9] it would not be able to recover under its indemnity agreement. However, the broader indemnity language contained in General Provision 107.14 and that of the contract bond is not limited to injuries to the persons or property. In construing the language of an express indemnity contract, our ordinary rules of contract construction apply. *Sellers v. Owens–Illinois Glass Co.,* 156 W.Va. 87, 92–93, 191 S.E.2d 166, 169 (1972). *See generally* 41 Am.Jur.2d *Indemnity* § 12 (1995).

■ We find the indemnity language in question to be sufficiently plain, unambiguous, and broad to cover the losses incurred by Greer as a result of the delay, neglect, and omissions of Green. The indemnity lan-

7. The pertinent indemnification language in *Fairbanks North Star Borough,* 727 P.2d at 759, is:
   " 'The Contractor shall save, hold harmless and indemnify the Borough from any liability, claims, suits or demands, including costs, expenses and reasonable attorney's fees, incurred for or on account of injuries or damages to persons or property as a result of any act or omission of the Contractor in the performances pursuant to this contract.' "

8. The relevant indemnity language in *Friedman, Alschuler and Sincere,* 140 Ill.App.3d at 558–59, 95 Ill.Dec. at 88, 489 N.E.2d at 309, is:
   " 'To the extent permitted by applicable law, it is understood and agreed that Subcontractor

shall defend, indemnify and save harmless Contractor, its officers, employees, agents and servants, the Owner, and the Architect against all loss, damage and expense, whether incurred or paid, on account of death, injuries, damages or loss to persons (including, without limiting the generality of the foregoing, employees of Subcontractor) or property, caused by or in any way arising directly or indirectly out of or connected with or incidental to the performance of the work by Subcontractor[.]' "

9. For the applicable language of paragraph 4, see note 1, *supra.*

guage in General Provision 107.14 is "from all suits, actions, or claims of any character" arising "on account of the operations of the Contractor[.]"[10] Moreover, the contract bond indemnity language is even broader, covering losses to DOH from any cause whatsoever from the construction of the road.[11] There is no limitation in the indemnity language to damages arising for personal injuries and property damage. This indemnity language is sufficiently plain to meet the requirements of Syllabus Point 1 of *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962):

> "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."

*See also Fraley v. Family Dollar Stores of Marlinton, W.Va., Inc.,* 188 W.Va. 35, 422 S.E.2d 512 (1992); *Kanawha Valley Power Co. v. Justice,* 181 W.Va. 509, 383 S.E.2d 313 (1989).

## IV.

▮▮▮ Green and American claim their due process rights were violated when the circuit court gave *res judicata* effect to the Court of Claims judgment when they were not parties to and did not appear in the Court of Claims action filed by Greer. In indemnity cases, we recognize the distinction between express indemnity and implied indemnity. *See* Syl. pt. 1, *Valloric v. Dravo Corp.,* 178 W.Va. 14, 357 S.E.2d 207 (1987).[12]

▮▮▮ In this case, we deal with an express indemnity agreement. Moreover, under our indemnity law, where indemnitors (such as Green and American) are given reasonable notice by the indemnitee of a claim that is covered by the indemnity agreement and are afforded an opportunity to defend the claim and fail to do so, the indemnitors are then bound by the judgment against the indemnitee if it was rendered without collusion on the part of the indemnitee. We spoke to this point in *Hill v. Joseph T. Ryerson & Son, Inc.,* 165 W.Va. 22, 28, 268 S.E.2d 296, 302 (1980), where we quoted Section 32a(2) from 42 C.J.S. *Indemnity* (1944). Similar language now is found in Section 56a of 42 C.J.S. *Indemnity* (1991), which states:

> "Where the indemnitor is notified of the pendency of an action against the indemnitee in reference to the subject matter of the indemnity and is given an opportunity to defend such action, the judgment in such action, if obtained without fraud and collusion, is conclusive on the indemnitor as to all questions determined therein which are material to a recovery against him in an action for indemnity brought by the indemnitee; and it is not open to collateral attack by the indemnitor, and the judgment is conclusive against the indemnitor whether or not he appears and defends." (Footnotes omitted).

*See also Valloric, supra.*

Our indemnity law is consistent with that of other jurisdictions where courts hold that an indemnitor given reasonable notice by the indemnitee is obligated to assume the defense and, if the indemnitor does not, then it is bound by the judgment. *See, e.g., D.G. Shelter Prods. Co. v. Moduline Indus., Inc.,* 684 P.2d 839 (Alaska 1984); *Litton Systems, Inc. v. Shaw's Sales and Serv., Ltd.,* 119 Ariz. 10, 579 P.2d 48 (1978); *Trustees of New York, New Haven & Hartford R.R. Co. v. Tileston & Hollingsworth Co.,* 345 Mass. 727, 189 N.E.2d 522 (1963); *Liberty Mut. Ins. Co. v. J.R. Clark Co.,* 239 Minn. 511, 59 N.W.2d

10. For the applicable language of General Provision 107.14, see note 2, *supra.*

11. See note 3, *supra,* for the indemnity language of the contract bond.

12. Syllabus Point 1 of *Valloric, supra,* states:
"There are two basic types of indemnity: express indemnity, based on a written agreement, and implied indemnity, arising out of the relationship between the parties. One of the fundamental distinctions between express indemnity and implied indemnity is that an express indemnity agreement can provide the person having the benefit of the agreement, the indemnitee, indemnification even though the indemnitee is at fault. Such result is allowed because express indemnity agreements are based on contract principles. Courts have enforced indemnity contract rights so long as they are not unlawful."

899 (1953); *City of Columbus v. Alden E. Stilson & Assoc.*, 90 Ohio App.3d 608, 630 N.E.2d 59 (1993); *Southern Ry. Co. v. Arlen Realty and Dev. Corp.*, 220 Va. 291, 257 S.E.2d 841 (1979). Both *Litton Systems, Inc., supra,* and *Liberty Mutual Insurance Co., supra,* specifically discuss due process. The Arizona court in *Litton Systems, Inc.,* made this summary: "Binding the indemnitor to a judgment against the indemnitee, where the indemnitor has received due notice of the pending litigation, is not a denial of due process." 119 Ariz. at 14, 579 P.2d at 52. (Citation omitted).[13]

Green and American cite cases that speak to due process concerns in other than indemnity situations. While we agree with the principles they espouse, under the particular facts, we find them not to be helpful in this case.[14] Green and American cite both *Valloric, supra,* and *Hill, supra,* but fail to acknowledge the language in these cases that provides that if reasonable notice is given to the indemnitor and it refuses to honor the indemnity agreement, it is bound by the judgment. Instead, Green and American quote language from both cases referring to an indemnitor who received no notice of its duty to indemnify.

We also find Green's and American's citation to several other cases not to be helpful to their position. For instance, *Chicago Title Insurance Co. v. IMG Exeter Associates Ltd. Partnership,* 985 F.2d 553 (4th Cir.1993), is an unpublished disposition. Under the Internal Operating Procedures (I.O.P.) of the United States Court of Appeals for the Fourth Circuit, the court "will not cite an unpublished disposition in any of its publish-

ed or unpublished dispositions." I.O.P. 36.6. Consequently, we decline to consider this case.

According to Green and American, *Chicago Title Insurance Co., supra,* cited *Jennings v. United States,* 374 F.2d 983 (4th Cir.1967). However, *Jennings* also recognizes the rule "that where an indemnitor is notified and can take part in—indeed may control—the litigation,. he is precluded from contesting the indemnitee's liability in the subsequent indemnity action." 374 F.2d at 986. This same proposition was acknowledged in another case cited by Green and American, *Southern Railway Co. v. Arlen Realty and Development Corp.,* 220 Va. at 295, 257 S.E.2d at 844: "[A] judgment entered in favor of a third party against the indemnitee is not conclusive upon the indemnitor unless the indemnitee gave the indemnitor notice of and an opportunity to defend the prior suit." *See generally* Annot., 73 A.L.R.2d 504 (1960).

The factual record in this case is clear. Green and American did receive adequate notice of Greer's claim against DOH and had an opportunity to defend. By a letter dated January 16, 1987, DOH forwarded to Green and American the itemized damage claim it received from Greer, which asserted these damages were a result of Green's delays. On October 30, 1987, DOH transmitted to Green and American, by certified mail, a copy of the complaint filed against it on October 27, 1987, in the Court of Claims. In its letter, DOH advised both parties that it expected to be indemnified by them. As stated more fully in Part I, *supra,* both Green and American acknowledged these letters and were aware

---

13. The rationale behind the indemnitor's liability is summarized in Section 57 of the Restatement (Second) of the Law of Judgments at 78 (1982):

"The existence of the right of defense is a basis for estoppel against the indemnitor if he fails to exercise it after having received notice of the action. Having had the opportunity to defend the action against the indemnitee, he may not dispute the correctness of the determinations arrived at in the action if he fails to exercise that opportunity. Had he taken over the defense of the indemnitee, he could have litigated the question of the indemnitee's liability and also the amount of recovery to which the injured person is entitled. The indemnitor's opportunity to litigate accordingly results

in his being estopped to dispute the existence and extent. of the indemnitee's liability to the injured person."

14. Most of the cases cited involve lack of notice or the refusal to allow a party to be heard before being deprived of a property interest. *See, e.g., United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (forfeiture of real estate without hearing); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (discharge from job without hearing); *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (lack of adequate notice).

of Greer's suit in the Court of Claims. Ultimately, they did not assume defense of DOH in the Court of Claims.

## V.

Both *Hill, supra,* and *Valloric, supra,* indicate the judgment rendered against an indemnitee has a *res judicata* or collateral estoppel effect when a suit is filed against the indemnitor to collect the judgment.[15] This precludes the indemnitor from relitigating issues, such as the indemnitee's liability to the injured party or the amount of damages awarded. Also foreclosed are other issues that were litigated in the former action defended by the indemnitee. This rule is tempered by the ability of the indemnitor to show the judgment against the indemnitee was collusively obtained, as set out in *Hill,* 165 W.Va. at 28–29, 268 S.E.2d at 302, *quoting* 42 C.J.S. *Indemnity* § 32a (1944). *See also Uniroyal, Inc. v. Chambers Gasket & Mfg. Co.,* 177 Ind.App. 508, 380 N.E.2d 571 (1978); *Globe & Republic Ins. Co. v. Independent Trucking Co.,* 387 P.2d 644 (Okla. 1963); *City of Burns v. Northwestern Mut. Ins. Co.,* 248 Or. 364, 434 P.2d 465 (1967); *Shamrock Homebuilders, Inc. v. Cherokee Ins. Co.,* 225 Tenn. 236, 466 S.W.2d 204 (1971), *appeal after remand,* 486 S.W.2d 548 (Tenn.App.1972).

Green and American do not assert that DOH's defense in the Court of Claims was collusive as to Greer's claim. We discussed in Part III the several claims made by Green and American of a valid defense to avoid the indemnity agreements. We rejected them and need not go over them in detail. It is sufficient to state that none of their claims reached the level where it can be said the judgment was collusive. For future guidance of the parties, we adopt the positions taken by the Ohio court in *City of Columbus v. Alden E. Stilson & Associates, supra.* There, Stilson claimed it could not honor its indemnity agreement with the City because of a conflict in another case. The court rejected this claim by holding such matters were required to be litigated in the original action:

"Moreover, even if we were to find, as Stilson urges in the arguments set forth above, that a conflict existed, the Ohio Supreme Court has expressly held that where an indemnitor believes that its interest does not coincide with that of the indemnitee, it must enter the case nonetheless, if necessary as a third party defendant:

"'It is this opportunity that must be seized. Otherwise, whether seized or not, the opportunity to litigate in the original action will preclude relitigation of liability in the supplemental proceeding.' *Howell v. Richardson,* (1989), 45 Ohio St.3d 365, 367–368, 544 N.E.2d 878, 881.

"Under *Howell,* the time has passed at which Stilson could properly have asserted its right to a judicial determination of its obligation to defend under the indemnity clause. The rule set forth in *Howell* appears to promote judicial economy by preventing relitigation of previously decided issues, while preserving the indemnitor's right to establish either a conflict of interest or non-applicability of an indemnity provision." 90 Ohio App.3d at 616, 630 N.E.2d at 64–65.

We address Green's and American's argument that they could not appear in the Court of Claims as there is no procedure for a third party to come into an action in the Court of Claims. Such a third-party practice, according to Green and American, is not contemplated under the statute creating the Court of Claims. W.Va.Code, 14–2–1, *et seq.* This claim is based on Green's and American's misunderstanding of *Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 302, 359 S.E.2d 124, 135 (1987). Green and American contend that in *Mellon–Stuart* we held the adoption of the West Virginia Rules of Civil Procedure by the Court of Claims was inconsistent with the statutory restrictions. They fail to recognize that *Mellon–Stuart* dealt with the limited

---

**15.** It generally is recognized that reasonable attorney's fees are also collectible by an indemnitee in defense of the suit. *See State ex rel. Vapor Corp. v. Narick,* 173 W.Va. 770, 775, 320 S.E.2d 345, 350 (1984). The right to collect interest on the judgment was approved in *Valloric,* 178 W.Va. at 22, 357 S.E.2d at 215–16.

question of whether Rule 13(a) of the West Virginia Rules of Civil Procedure on compulsory counterclaims applied to the State when it was sued in the Court of Claims.

We found Rule 13(a) did not apply to the State because W.Va.Code, 14–2–13(2) (1967), provided that the Court of Claims was authorized to hear matters "which may be asserted in the nature of a setoff or counterclaim on the part of the State or any state agency." The critical point made was that the word "may" used in the statute gave the State an option to assert a setoff or counterclaim, which overrode the mandatory language of Rule 13(a).

We did not hold in *Mellon–Stuart* that the West Virginia Rules of Civil Procedure could not be adopted by the Court of Claims. Indeed, in 1967 the Legislature authorized the Court of Claims to adopt rules of procedure. W.Va.Code, 14–2–15 (1967).[16] The Court of Claims has adopted such rules under Rule 18 of the Rules of Practice and Procedure of the Court of Claims.[17]

There is no statutory provision applicable to the Court of Claims which forecloses an indemnitor from intervening under Rule 24(a)(2) of the West Virginia Rules of Civil Procedure.[18] This intervention procedure enables an indemnitor to have a determination as to whether under the express indemnity language a defense is required of the state agency which has been sued in the Court of Claims. We deem this type of intervention to be one of right where an intervenor has been put on notice by the indemnitee that it should assume the defense in the Court of Claims as occurred here. We have already pointed out that the failure to assume the defense after reasonable notice will result in a *res judicata* application of the judgment against the indemnitor. The federal courts, applying the substantially similar provisions of Rule 24(a)(2) of the Federal Rules of Civil Procedure, hold that, where *res judicata* principles will be applied in a subsequent proceeding, intervention of right is appropriate under Rule 24(a)(2). *See generally,* 74 A.L.R.Fed. 632 (1985).

The Ohio court's reasoning in *City of Columbus, supra,* is consistent with our line of cases that permits parties to bring in insurance carriers to determine whether a duty to defend is owed under an insurance policy. For example, in *Christian v. Sizemore,* 181 W.Va. 628, 383 S.E.2d 810 (1989), we authorized a plaintiff in conjunction with a civil action for personal injuries to include a count for declaratory judgment to determine if the tortfeasor's insurance carrier has coverage.[19] More recently, in *State ex rel. State Farm Fire & Casualty Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994), we authorized the joining of the insurer as a defendant by the injured party where there is a claim that the insurer acted in bad faith or was guilty of unfair insurance practices.[20]

**16.** The current version of the statute authorizes the Court of Claims to adopt Rules of Procedure: "The court shall adopt and may from time to time amend Rules of Procedure[.]" W.Va.Code, 14–2–15 (1994). Furthermore, this section specifically authorizes the use of discovery "conducted pursuant to the Rules of Civil Procedure for trial courts of record, Rules 26 through 36."

**17.** Rule 18 of the Rules of Practice and Procedure of the Court of Claims states: "The Rules of Civil Procedure will apply to the Court of Claims unless the Rules of Practice and Procedure of the Court of Claims are to the contrary."

**18.** Rule 24(a) of the Rules of Civil Procedure, states, in relevant part:
"*Intervention of Right.*—Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

**19.** Syllabus Points 3 and 4 of *Christian, supra,* state:
"3. An injured plaintiff may bring a declaratory judgment action against the defendant's insurance carrier to determine if there is policy coverage before obtaining a judgment against the defendant in the personal injury action where the defendant's insurer has denied coverage.
"4. A declaratory judgment claim with regard to the defendant's insurance coverage may be brought in the original personal injury suit rather than by way of a separate action."

**20.** Syllabus Points 1 and 2 of *State ex rel. State Farm v. Madden, supra,* state:
"1. Under Rule 18(b), *WVRCP* [1978], an insurer may be joined as a defendant with the

Finally, and somewhat more relevant to the facts of this case, we held in *State ex rel. Allstate Insurance Co. v. Karl*, 190 W.Va. 176, 437 S.E.2d 749 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1302, 127 L.Ed.2d 653 (1994), that an uninsured or underinsured motorist carrier could under W.Va.Code, 33–6–31(d) (1988), file a response to the plaintiffs' action and raise policy defenses that it may have.[21] The public policy behind these procedural rules is to obtain in one suit a decision on all the various issues that may exist in the underlying claim. This results in judicial economy, thereby reducing costs to the litigants. It prevents a multiplicity of actions, which may result in inconsistent verdicts. This public policy is echoed in Rule 1 of the West Virginia Rules of Civil Procedure, which states that the civil rules "shall be construed to secure the just, speedy, and inexpensive determination of every action."

Consequently, we hold that when the State or one of its agencies is sued in the Court of Claims and the State has an indemnity agreement with a third party indemnitor, upon reasonable notice by the State or its agency to defend under the indemnity agreement, the indemnitor must either defend the suit or intervene under Rule 24(a)(2) of the West Virginia Rules of Civil Procedure and assert any defenses it claims would enable it to avoid the duty to defend the indemnitee under the indemnity agreement. The failure to take either step forecloses the indemnitor

from contesting the validity of the judgment rendered against the indemnitee on any grounds except a claim that the indemnitee allowed the judgment to be obtained by collusion in the Court of Claims.

Independent of the foregoing intervention procedure, we find Green and American were given reasonable notice of the claim by Greer, they were covered under the indemnity language in the contract, and they were offered the right to defend the claim. Under settled principles of *res judicata* and collateral estoppel, as outlined in Syllabus Points 3 and 4 of *Mellon–Stuart, supra*,[22] Green and American were bound in the declaratory judgment action by the judgment rendered against DOH in the Court of Claims:

"3. An assessment of three factors is ordinarily made in determining whether res judicata and collateral estoppel may be applied to a hearing body: (1) whether the body acts in a judicial capacity; (2) whether the parties were afforded a full and fair opportunity to litigate the matters in dispute; and (3) whether applying the doctrines is consistent with the express or implied policy in the legislation which created the body.

"4. Res judicata or collateral estoppel effect may be given to matters litigated in the court of claims."

*See also Vest v. Board of Educ. of the County of Nicholas*, 193 W.Va. 222, 455 S.E.2d 781

---

insured by an injured plaintiff alleging various claims of bad faith and unfair insurance practices.

"2. Under [R]ule 18(b), *WVRCP* [1978], as long as the claims against the insurer are bifurcated from those against the insured, and any discovery or proceedings against the insurer are stayed pending resolution of the underlying claim between the plaintiff and the insured, there is no undue prejudicial impact on a jury of joining in an original pleading or amending a pleading to assert bad faith or unfair insurance practices counts against an insurer in an original action against insured."

21. Syllabus Point 14 of *State ex rel. Allstate Insurance Co. v. Karl, supra*, states: "The language of W.Va.Code, 33–6–31(d) (1988), that allows an uninsured or underinsured motorist carrier to answer a complaint in its own name is primarily designed to enable the carrier to raise policy defenses it may have against the plaintiff under its uninsured or underinsured policy."

22. In *Mellon–Stuart*, 178 W.Va. at 298–99, 359 S.E.2d at 131–32, we made this summary of the principles of *res judicata* and collateral estoppel:

"Very broadly, res judicata is a doctrine which bars the subsequent litigation of any cause of action which has been previously tried on the merits by a court of competent jurisdiction, and includes within its bar issues which might have been tried....

"Collateral estoppel is a related doctrine, which applies to issues that were actually litigated in an earlier suit even though the causes of action are different. Res judicata focuses on whether the cause of action in the second suit is the same as in the first suit. The central inquiry on collateral estoppel is whether a given issue has been actually litigated by the parties in the earlier suit." (Footnotes omitted). *See also State ex rel. Hamrick v. LCS Servs., Inc.*, 186 W.Va. 702, 414 S.E.2d 620 (1992).

(1995) [23]; *Central W.Va. Refuse, Inc. v. Public Serv. Comm'n of W.Va.*, 190 W.Va. 416, 438 S.E.2d 596 (1993); *Jones v. Glenville State College*, 189 W.Va. 546, 433 S.E.2d 49 (1993).

## VI.

In closing, we wish to make it clear that in affirming the judgment of the Circuit Court of Kanawha County, we find there exists no genuine issue of fact to be tried. The express indemnity language is found to be clear and unambiguous. Our existing indemnity law contained in *Hill, supra,* and *Valloric, supra,* requires the imposition against Green and American of the noncollusive Court of Claims judgment against DOH. While we recognize the right of an indemnitor to intervene under Rule 24(a)(2) in a suit brought against the State or one of its agencies in the Court of Claims, this right is not essential to our decision. Green and American failed to demonstrate that their alleged defenses were sufficiently viable to defeat the imposition of the judgment in the Circuit Court of Kanawha County. For the foregoing reasons, we affirm the judgment of the Circuit Court of Kanawha County.

Affirmed.

MILLER, J. (Retired), sitting by temporary assignment.

ALBRIGHT, J., did not participate.

---

**23.** In Syllabus Point 2 of *Vest, supra,* we expressed the standard for claim or issue preclusion as follows:

"2. For issue or claim preclusion to attach to quasi-judicial determinations of administrative agencies, at least where there is no statutory authority directing otherwise, the prior decision must be rendered pursuant to the agency's adjudicatory authority and the procedures employed by the agency must be substantially similar to those used in a court. In addition, the identicality of the issues litigated is a key component to the application of administrative *res judicata* or collateral estoppel."